UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KEMARI AVERETT

        Plaintiff

v.

**SHIRLEY ANN HARDY,**
Student Conduct Officer,
**ANGELA B. TAYLOR, PHD,**
Assistant Dean of Students,
**MICHAEL MARDIS, PHD,**
Dean of Students and Vice Provost for Student Affairs,
Employees and administrators of the Code of Student Conduct
sued in their individual and official capacities,

       Serve:  Office of the Dean of Students
                  Student Activities Center
                  2100 South Floyd Street
                  Louisville, KY  40208

**And**

University of Louisville

       Serve: Neeli Bendapudi, President
                Belknap Campus
                Administration Building
                2301 South 3rd Street
                Louisville, KY 40292

**And**

Board of Trustees
University of Louisville

       Serve:  Hon. David Grissom
                  Chairman Board of Trustees
                  Belknap Campus
                  Administration Building
                  2301 South 3rd Street
                  Louisville, KY  40292

Civil Action No. 3:16-cv-116-CHB

**COMPLAINT**

And

**Destinee Coleman**
Belknap Campus
University of Louisville
2301 South 3rd Street
Louisville, KY  40292

    Defendants

    *******************************************

  Comes Plaintiff Kemari Averett, by counsel, and for his cause of action herein states as follows:

### Jurisdiction, Parties and Venue

  1. This is an action for due process and equal protection violations under the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983 and 1988, and Title IX of the Education Amendments Act of 1972, 20 U.S.C. 1681 – 1688;

  2. This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 as the civil claims arise under the United States Constitution and laws of the United States.

  3. The injunctive relief sought in this matter is authorized by 42 U.S.C.§ 1983 and Federal Rule of Civil Procedure 65.

  4. Venue is proper pursuant to 28 U.S.C. §1391because all the Defendants reside in this judicial district and division and because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and division.

  5. This Court has pendent or supplemental jurisdiction over state law claims that are so related to federal law claims that they form part of the same controversy pursuant to the provisions of 28 U.S.C. § 1332 (3) and 28 U.S.C. § 1367 (a).

6. Plaintiff is a former student at the University of Louisville (hereinafter "University of Louisville" or "the University" or "U of L"), who came to the University as a scholarship athlete to play football in accordance with the constitution, rules, and laws of the National Collegiate Athletic Association ("NCAA").

7. Defendant University is a public university established by the Commonwealth of Kentucky through the Kentucky General Assembly and funded with state and federal funds. It may be served with process through its President, Neeli Bendapudi

8. Defendant Shirley Hardy is the Student Conduct Officer, and is sued in her individual and official capacities. Hardy is apparently responsible for the implementation of the Code of Student Conduct, including policies on sexual misconduct allegations. She is responsible for organizing, putting together evidence, identifying and contacting witnesses, and presiding over proceedings before the University's Disciplinary Hearing Panel, making evidentiary rulings during the proceedings. She is a state actor for purposes of 42 U.S.C. § 1983 *et. seq.*

9. Defendant Angela B. Taylor, PhD is the Assistant Dean of Students. She reviews the evidence produced during the hearing and the decision maker on whether to accept or reject the recommendation of the Hearing Panel. She is a state actor for purposes of 42 U.S.C. § 1983.

10. Defendant Michael Hardis, PhD is the Dean of Students and Vice Provost for Student Affairs. He is the ultimate decision maker regarding disciplinary hearing and its appeals process. He is a state actor for purposes of 42 U.S.C. § 1983.

11. Defendant Board of Trustees is a constitutional corporate body operating and governing the University of Louisville within the Western District of Kentucky.

12. Defendant Destinee Coleman at all relevant times complained of herein was a

student at the University who made the allegations spawning the disciplinary proceedings leading to this lawsuit.

## Facts

**A.     Plaintiff was a 2.8 GPA Student at the University of Louisville When The University Filed a Complaint Against Him Charging Him With Raping Destinee Coleman.**

13.     On or about May 2017, Plaintiff began attending the University of Louisville as an undergraduate student on a football scholarship with the hope of becoming a professional football player.

14.     From August 2017, Plaintiff successfully completed three-plus semesters at the University with a cumulative 2.8 GPA.

15.     Prior to the events described herein, Plaintiff had an excellent reputation, was not involved with law enforcement, and was never disciplined by the University.

16.     On or about October 9, 2018, a member of the University's coaching staff contacted Plaintiff and asked him if he had seen the e-mail from the Dean's office.  When he told him that he had not, the coach told him that a meeting had been scheduled for him to meet with Ms. Hardy. He told him where the meeting was and the time. He instructed him to call him after he met with Ms. Hardy.  He did not give him any further instructions or advice.  The e-mail instructed him to stay away from Destinee Coleman.  When he met with Ms. Hardy, she asked him if he was aware that Destinee Coleman had accused him of raping her on August 16, 2018. He said he was not.  He then searched his phone and told her that he was at practice on that day. He told Ms. Hardy that he had dated and had sex with Coleman several times in the past and that it was always consensual.  Hardy told him at that time that it would never get to the media because there was no way they could tell if it was true or false.

17. He did not hear anything else from Hardy or any other University officials until he got a letter from Hardy dated November 2, 2018, informing him that the University had charged him with violating various provisions of the Student Code of Conduct at the Clubhouse on August 14, 2018. The letter informed him that a student conduct hearing was scheduled for November 12, 2018 **(attached hereto as Exhibit 1).**

18. The Code of Student Conduct ("Code") provides that a charge will be subject to a hearing before the Disciplinary Hearing Panel presided over by a Hearing Officer, that the University will apply a preponderance of the evidence standard in any hearing, that if the student is found to have violated the Sexual Misconduct Policy, the Hearing Panel will recommend appropriate action, such as suspension or expulsion.

19. The Code states that members of the Hearing Panel are trained but does not detail the training that they receive. Nor does it describe the training, if any, that they receive in due process rights.

20. The hearings are presided over by a Hearing Officer, in this case Shirley Hardy, who possesses unfettered authority to make rulings on evidentiary matters and any other issues that arise during the hearing. The Code does not describe what training and experience, if any, that the Hearing Officer has received or her educational background and credentials.

21. A number of provisions of the Code and the Sexual Misconduct Policy raise significant due process and self-incrimination issues, including:

(a) The accused student is permitted to have an attorney present at the hearing, but the attorney may not participate in any way as a spokesperson or vocal advocate in the hearing;

(b) The Hearing Panel may review written statements and accused students may

question witnesses, but without training in the law they are essentially helpless.

(c)  The Officer has the discretion of putting a screen or partition between the accuser and the accused student to prevent the accused from seeing the accuser, which was the case at bar.

(d)  Plaintiff was tried before a Panel and Hardy on November 12, 2018 and the Panel recommended to the Assistant Dean of Students that in addition to other infractions he raped his accuser, Destinee Coleman.

(e)  Mr. Averett appealed her decision to the Dean of Students.  He affirmed his Assistant Dean's decision.

22.   Averett did not rape Destinee Coleman.  He has been expelled from school and has not been able to enroll in another school because of the matter.  Worst yet, the matter will soon be submitted to the Jefferson County Grand Jury.

**B.   University Policy Denied Plaintiff Notice and a Meaningful Hearing, thus Denying him Due Process.**

23.   Section 11.2 of the Code of Student Conduct ("Code") provides, in part, as follows

> An administrative conduct meeting is between (sic) the accused student and the Dean of Students Office staff.  The meeting is designed to provide the accused an opportunity to give their (sic) account of the incident, to think critically, reflect on the behavior and decisions that led to this situation, and to discuss alternative options for the future . . . . **(Exhibit 2 attached hereto).**

Despite this clear mandate, Hardy did not allow Averett to present the statement that he had prepared.  That statement provided a comprehensive history of his relationship with Coleman, particularly the manner that she would enter his apartment and his recollection of their sexual encounter on August14, 2018 (**attached hereto as Exhibit 3**).  She ordered him to condense it to a half page, thus omitting critical information and context proving his innocence

**(attached hereto as Exhibit 4)**.

24.     The foregoing Section 11.2 of the Code puts the onus of the accuser and the accused to identify witnesses and obtain their statements.  That provision states in pertinent part as follows:

> The accused student and the complainant, if any, have the opportunity to present information by witness or by written statement from a witness sent to the Dean of Students Office staff. . . . The witness statement will be reviewed by the hearing officer to verify that the statement was written by the witness . . . .The hearing officer will review witness statements for incident information.  The hearing officer will determine whether the statement(s) is appropriate for inclusion in the hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Despite these provisions, Hardy showed her bias against Averett by personally sending letters to the following individuals, whose names apparently had been provided by Coleman, soliciting their statements and encouraging their testimony:  (1) Breanna Butler, (2) Shirley Hardy, (3) Lakeya Martin, (4) Tisha Pletcher **(attached hereto as collective Exhibit 5).**  Her conduct showed bias against Averett, thus depriving him of due process and equal protection under the Fourteenth Amendment.

25.     The Code also states further as follows:  "The Dean of Students Office staff reviews all available information with the accused student . . . ."  The Dean's staff did not review any of the material introduced at the hearing with Plaintiff.  Hardy put the material on Plaintiff's table a few short minutes before the hearing began despite the date of the letter, November 6, 2018.  This left Plaintiff with no time to prepare questions to put to the witnesses.  This is particularly so with regard to the alleged victim and her medical records, which included exculpatory information.  Furthermore, Hardy denied Plaintiff's advisor's request to record the beginning and introductory and explanatory portion of the hearing.  Nor was Plaintiff allowed to register any objections to evidence that was clearly inadmissible under the most rudimentary

rules of evidence and was entered for no other purpose than to prejudice the hearing panel, to wit:

 (1) Testimony of Coleman's roommate(s) and friends giving medical opinions about Coleman's mental and psychological state,

 (2) Coleman's medical records connecting her medical condition (tics) to the alleged rape. Those records record that her tics are triggered when she sees a large black male and when she is getting ready to go somewhere. Those records included an entry noting that she had been seen the year before for the same condition and was referred for counseling, which she did not keep (**attached hereto as Exhibit 6).**

 (3) Newspaper articles on a separate and unrelated case accusing him of putting a gun to his pregnant girlfriend's head (**attached hereto as Exhibit 7**).

 (4) Snapchat conversation between Coleman and PJ Blue, who also had sexual relations with her (**attached hereto as Exhibit 8).**

 (5) A uniform citation report prepared by Detective William Brown, University of Louisville Police that creates the impression that Averett had already been charged with crimes against the Commonwealth of Kentucky (**attached hereto as Exhibit 9)**

  **C.** **The Investigation Denied Plaintiff Due Process.**

 26. The question at issue in the investigation was whether Destinee Coleman and Kemari engaged in consensual sex. Prior to the hearing on November 12, 2018, Averett released his cellphone to Detective Brown for the purpose of tracing the history of the parties' relationship. Detective Brown took it to the FBI lab to extract material from the phone. Prior to releasing it to Detective Brown, Averett opened the phone and showed him photographs of him and Coleman having sex, including her twerking naked. The exhibitions were filmed not at Averett's request but at Coleman's request and instigation. The phone also contained several snapchat conversations between the two of them showing that she continued to chase him after he had broken off relations with her. One of her messages stated, "I guess you don't want my

slow ass anymore." Detective Brown viewed those images in Averett's lawyer's office and in the presence of other witnesses.

When Detective Brown returned the phone two days later, he reported that the FBI was unable to extract the snapchat conversations from the phones because they had been removed, but the photos of the sexual encounter and the twerking remained. Despite working closely with Detective Brown in putting the case against Averett together, Ms. Hardy did not include him as a witness. When Averett and his attorney prompted her to contact Detective Brown to explain what he had witnessed and why the material had been erased from his phone, she refused to do so.

Furthermore, neither she nor the Hearing Panel questioned Destinee Coleman about why she removed the Snapchat material.

Hardy offered no explanation as to why the Defendants did not produce Detective Brown to offer evidence in this matter and to be questioned by her, the Hearing Panel, and more importantly, Mr. Averett.

**COUNT I**
*42 U.S.C. § 1983 – Fourteenth Amendment*
*Procedural Due Process*
*Property and Liberty Interests*
(as to Defendants Hardy, Taylor and Mardis

27. Plaintiff repeats, reiterates and incorporates by reference, as if fully set forth herein all the foregoing allegations in numerical paragraphs 1-26.

28. The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property without due process of law."

29. Fourteenth Amendment due process protections are required in higher education disciplinary decisions at public institutions.

30. Plaintiff was entitled to reasonable notice and a meaningful opportunity to be heard.

31. Plaintiff has a protected liberty interest in his good name, reputation, honor, and integrity which he cannot be deprived of by the state absent due process.

32. Plaintiff has a protected liberty interest in pursuing his education at a public university, which the state cannot deprive him of absent due process.

33. Plaintiff also has a protected liberty interest in his future educational and employment opportunities, including professional football, which the state cannot deprive him of absent due process.

34. Plaintiff was entitled to process commensurate with the seriousness of the allegations and the potential discipline, sanctions, and repercussions he was facing and continues to face. Here the allegations were of the utmost seriousness, have lifelong ramifications, and subject him to being convicted of a Class B Felony

35. Plaintiff had a significant interest in avoiding expulsion and being subjected to an impartial panel.

36. Plaintiff has been and will continue to be forced to tell other institutions about the finding of sexual misconduct and rape against him, as well as friends and family.

37. The University provided an appeals process that was inherently biased and lacking in fair standards and composition.

38. Providing a fair and impartial panel does not impose a great administrative burden on a university.

39. Defendants' actions and inactions as set forth above were fundamentally unfair to Plaintiff.

40. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has and will suffer irreparable harm, injury and damages, including, but not limited to denial of educational opportunities, denial of the ability to receive a degree from the university or even attend it again, a permanent disciplinary record which he will have to contend with and explain for the rest of his life, denial of future educational and employment opportunities, including professional football and career choices, false permanent findings and discipline on his record for serious sexual misconduct which did not occur; damage to his standing ands associations in his community and imposition of a stigma or other disability that forecloses his freedom to take advantage of other educational or employment opportunities, loss of career opportunities and earning capacity, mental and emotional distress, loss of earning capacity, mental and emotional distress, humiliation and embarrassment, and loss of personal and professional reputation.

## COUNT II
*Title IX, 20 U.S.C. § 1681-88-Disparate Treatment Based on Sex*
*(As to Defendants University of Louisville and*
*Board of Trustees of the University of Louisville*

41. Plaintiff reiterates, realleges and incorporates by reference as if fully set forth herein the foregoing allegations in numerical paragraphs 1-40.

42. Title IX prohibits discrimination on the basis of sex in educational institutions, including the University of Louisville.

43. Title IX applies to an entire school or institution if any part of that school receives federal funds.

44. Defendants receive federal funding.

45. Both the Department of Education and the Department of Justice have promulgated regulations under Title IX that require a school to adopt and publish grievance procedures providing for the prompt and equitable resolution of student . . .complaints alleging

any action which would be prohibited by Title IX or regulations thereunder. See 34 C.F.R. § 106.8(b) (Dep't of Education); 28 C.D.R. § 54.135 (b) (Dep't of Justice). Such prohibited actions include all forms of sexual harassment, including sexual misconduct. *See generally* U.S. Dep't of Ed., Office for Civil Rights, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties – Title IX (2001) at 19-20, 21 & nn. 91-101*.

46. The procedures adopted by a school covered by a school covered by Title IX must "accord[]due process to both parties involved." See *Id.*

47. A school must, therefore, provide at a minimum, "[a]dequate, reliable, and impartial investigation of complaints." See *Id.*

48. A school also has the obligation under Title IX to ensure that all employees involved in the conduct of the procedures have "adequate training as to what conduct constitutes sexual harassment," including sexual misconduct. See *Id.*

49. Nothing in Title IX, Title IX guidance, or the Dear Colleague Letter prohibits the University in any way from providing a student accused of sexual misconduct with a full hearing; in fact, Title IX guidance and the Dear Colleague Letter assume that there is going to be a hearing with some type of cross-examination.

50. Defendants have violated IX by treating him differently because of his sex, and Plaintiff verily believes it is because the University acted out of fear to the "Me Too Movement." This is particularly so based on the alleged victim's own preposterous description and explanation of the alleged rape, to wit:

> Everything thing (sic) was going great. I was at his place and I stayed. He had posted something about practice and was sad so I said I was going to come over after work. I went home and let the dog out and showered and went over there. His door was open and he was asleep. So I got in bed with him with all my

clothes on. I went to sleep. When he woke up we cuddled. He set his alarm for 8 o'clock. He was talking to his brother on the phone and was rubbing on my back. He put me in the missionary position. He said you should have woke me up so we could have sex. I said I do not want to have sex with you. He pulled my pants down and was rubbing on me and I told me (sic) that I did not want to have sex. He said we aren't you still have your panties on. I said I am not even horny or wet down there. He said I will get you wet. That is when he licked his fingers and put them inside me. I said I do not want to have sex with you. That is when he pulled my panties down and put his dick in me. I said it hurts and I am so dry down there. He then flipped me over and told me to arch my back and I said no I do not want to do this. I know he got off because it was on my side or my thigh. He got up and went to the shower and I said I did not want to do that and I wiped off with baby wipes and flushed them down the toilet. He then said well then just work on it. I said no and he said to leave.

    Coleman, Destinee\
    Dob:\
    #942\
    8/14/16\
**(copy attached hereto as Exhibit 10)**

51. Based on the foregoing, Defendants have deprived Plaintiff, on the basis of his sex, of his rights to due process and impartiality through the improper administration of the hearing and appeals process.

52. As a direct and proximate result of Defendants' actions, Plaintiff has and will suffer irreparable harm, injury, and damages, including but not limited to denial of educational opportunities, denial of the ability to receive a degree from the University, a permanent disciplinary record which he will have to contend with for the rest of his life, denial of future educational and employment opportunities, including a professional football career, permanent findings and discipline on his record for rape that did not occur, damage to his standing and associations in his community and imposition of a stigma or other disability that forecloses his freedom to take advantage of his God-given talents, loss of career opportunities and earning capacity, mental and emotional distress, humiliation and embarrassment, and loss of personal and professional reputation.

## COUNT III
### State Law Claim – Defamation of Character
**(as to Defendants Shirley Hardy and Destinee Coleman)**

53. Plaintiff reiterates and incorporates by reference as if fully set forth herein the allegations contained in numerical paragraphs 1-52 above.

54. On or about August 14, 2018 and several times thereafter, Defendant Destinee Coleman falsely accused Plaintiff of raping her and published the false allegations on her Snapchat.

55. On the aforesaid date and ensuing days thereafter, Defendant Shirley Hardy, acting individually and in her official capacity for the University of Louisville published the rape allegations to members and employees of the Dean of Students Office and other members of the University of Louisville community. At the time of her publishing the claims, she had no corroboration or evidence that the allegations were true.

56. As a proximate result of the false allegations Plaintiff has suffered loss to his reputation, shame, mortification, and hurt feelings, all to his general damages in an amount no less than $5,000,000.00.

57. Upon information and belief, in engaging in the above conduct hereinabove described, the Defendants, and each of them, acted with malice, oppression, and/or fraud, entitling Plaintiff to exemplary and punitive damages in an amount no less than $10,000,000.00

WHEREFORE, Plaintiff respectfully demands judgment against the Defendants individually, collectively and severally as follows:

1. An award of damages, compensatory and punitive, in the amount of $15,000,000.00,

2. Expenses, court costs, and attorney's fee,

3. Trial by jury on all issues so properly triable;

    4.  Any and all further relief to which he may appear to be so properly entitled.

Respectfully Submitted

/ s /  Aubrey Williams  
AUBREY WILLIAMS  
One Riverfront Plaza  
Suite 1708  
401 West Main Street  
Louisville, KY  40202  
Tel:  (502) 581-1088  
Fax:  (502) 581-0595  
Aubreyw8243@bellsouth.net  
**Counsel for Plaintiff**
