UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| KEMARI AVERETT ) | |
|   Plaintiff ) | |
| ) | |
| ) | Civil Action No. 3:19-CV-116-CHB |
| v. ) | |
| ) | |
| ) | |
| UNIVERSITY OF LOUISVILLE, et al. ) | |
| ) | |
|   Defendants ) | |
| ) | |

**PLAINTIFF'S REPLY TO DESTINEE COLEMAN'S RESPONSE TO PLAINTIFF'S FOURTH AMENDED COMPLAINT**

Comes Plaintiff, by counsel, and states in reply to Defendant Destinee Coleman's Response In Opposition To Plaintiff's Fourth Amended Complaint, as follows:

It is more than interesting that counsel for Coleman seems to take offense at Averett's determination to restore his good name and salvage his college education and pursue a livelihood through his God-given talent to play professional football. The petulant reaction of counsel for Coleman and his assault on Averett's character do not obscure Coleman's mendacity and vicious determination to destroy him, and not only because he rejected her aggressive and shameless pursuit for sex, but that he preferred and had a baby by a young white woman.

Instead of abating, her viciousness intensified when the Jefferson County Grand Jury, despite the vigorous efforts of a seasoned prosecutor and veteran detective, refused to give credence to her unconscionable, preposterous, and vulgar concoction, driving her, as a last resort, with the misguided assistance of unknown counsel, to corrupt the purpose of the law to protect honest women with legitimate complaints from domestic violence. It is not insignificant that in

her petition, she admits that Averett was merely an acquaintance of hers (See Exhibit attached to Complaint).

Coleman and her counsel make a mockery of the statute. It was prompted by the sad and tragic case of Amanda Ross, the ex-fiancé of former Governor Louie Nunn's son, Steve Nunn who stalked and killed her. Former Speaker of the Kentucky House of Representative and Attorney General, Greg Stumbo spearheaded the legislation, which became known as "Amanda's Law." Coleman and her counsel's furtive conduct degrade Amanda's name and the purpose of the law. They conceal from the court that, to the surprise of Averett's counsel, they laid in wait for Averett to appear in District Court on June 4, 2019 to show proof that he had satisfied the court's order regarding the "save-face disposition" for the prosecutor in the unrelated case that had been thrown out. Obviously, Coleman's counsel was not aware that Averett did not have to personally appear or was expected to appear. It was at that time that he and the undersigned became aware of the shenanigans of Coleman and her counsel. It is slanderous, despicable, and outrageous that Coleman, having never been threatened, stalked, put in danger in any manner, would manipulate the court system the way she has. But then, what should one expect from such a person.

I. **Statement of the Facts**

On August 4, 2018, Destinee Coleman, who for a period of several weeks before had engaged in casual sex with Kemari Averett, a gifted football player, who had cut off relations with her, seized the opportunity to crawl into his bed at approximately 5:00 a.m. when she, meddling in his social media conversations with fellow football players and his brother, discovered that he had experienced a bad day of practice and was angered and sad. She, either offering or acquiescing, to coming and cuddling with him after she got off work at UPS,

informing him that she first needed to go home and bathe and fix herself up. She let herself into his apartment, which he had left unlocked and gone to bed. She crawled into his bed, aware that he was completely unclothed and began to cuddle him while he was asleep. When she awakened him and he reciprocated to her cuddling and responded, as any man would and as she expected, and began to remove her panties, she exclaimed that she was "dry," to which he responded, "I'll make it wet with my fingers." After he had satisfied her, instead of asking him how he was feeling psychologically, having used as a pretext to get into his bed that his social media conversations reminded her of her bouts with suicide, she asked him if he had that white girl pregnant (emphasis added). Despite having denied it prior to having sex, he admitted to it after they had sex. An argument ensued and he told her that she could leave his apartment. She left and promptly had a rape test done and let the sexual activities lie dormant until initiating the charge of rape several weeks later. Sometime thereafter, the Kafkaesque Star Chamber Student Code proceeding took place, prompting this lawsuit.

As Plaintiff's proposed Fourth Amended Complaint asserts, with the advice and apparent assistance of unknown counsel, Coleman petitioned Jefferson District Court to award her an order of protection. She admitted in the petition that she and Averett had dated but that they were no more than acquaintances. She made no allegations of threat or harm to her apart from her manufactured, libelous, and slanderous claim of rape. Her attorney falsely and recklessly asserts to this court, without even a scintilla of proof, that Averett avoided service of the summons. He, the apparently unknown counsel, knew or should have known that Averett had left Kentucky. They, and apparently along with others, apparently thought he had returned to Atlanta because they had Georgia authorities trying to serve him with the Interpersonal Protective Order (IPO).

It must be noted that she states in the Petition that she had no fear of him and that she had no thought of fear until she heard that he had put a gun (sic) to some girl's head. Lest this Court be misled, that false accusation, which received national and persistent coverage, was held for naught and dismissed with prejudice.

II.     ARGUMENT

It is respectfully submitted that counsel opposite's prolix brief is full of sound and fury meaning nothing. For example, he curiously asserts that Averett does not articulate theories supporting his motion to amend. He makes the curious suggestion that the brevity of Averett's claims makes them untenable and futile (Defendant's brief at 3). He ignores the fact, and takes out of context his cited authorities, that it is the substance of one's claims and not the bulk, as it were, that matters. More importantly, he seems to discount or is oblivious to the metaphysical and ontological reality that one acts, moves, and responds to things when they come to one's attention. As pointed out above, Averett did not become aware of the farcical IPO until June 2019. Likewise, he did not become aware of the University's scandalous and disparate application of its Student Code of Conduct toward the other football players until someone close to the University brought it to his attention. Counsel opposite's argument that the claims are untimely is lacking in substance and is nothing but a red herring.

The Defendants' argument that the proposed amendments are futile are equally porous. Abuse of process is the "irregular or wrongful employment of a judicial proceeding" which requires two additional elements: 1) An ulterior purpose, and 2) a willful act in the use of the process not proper in the regular conduct of the proceeding. *Barrios v. Elmore,* No. 3:18-cv-132-DJH-RSE, 2018 WL 3636576, at *7 (W.D. Ky. July 31, 2018) (emphasis added) (citing

*Murphy v. Bruner*, No. 5*:17-CV-376-KKC, 2018 WL* 2392510 at *5 (E.D. Ky, May 25, 2018) (quoting *SpiritCommc'ns Co. v. Leggett,* 307 S.W.3d 109, 114 (Ky. 2010).

Pursuant to KRS 456.030: Petition for interpersonal protective order, an alleged victim of dating violence or abuse or other alleged victim of sexual assault files a petition on a form prescribed by the court which will be filed with the court(District Court and Circuit Court have concurrent jurisdiction) KRS 456.030 (4) (5) and (6). Therefore, the tort for abuse of process applies to KRS 456.030 since they involve judicial proceedings. The other two elements are involved in this case**:**

**B. Element One**: <u>Ulterior Motive for using the judicial process</u>. Except on the issue of punitive damages, the "malice" element of abuse of process concerns using the court process for some other improper purpose other than for which the process was intended. *Bourbon County Joint Plan*ning *Com 'n v. Sipson*, 799 S.W.2d 42, 45 (Ky. Ct. App. 1990); *Raine v. Drasin,* Ky. 621 S.W.2d 895 (1981). The core issue is the defendant's motive for using the process, not any statements during the judicial proceedings. *Halle v. Banner Industries of N.E., In*, 453 S.W.3d 179 (Ky. Ct. App. 2014)

As the proposed Amended Complaint alleges, Coleman's motivation for filing the petition had nothing to do with alleged dating violence, but instead to obstruct Averett's efforts to obtain a college education and future career as a professional football player, all because he was dating a white female who was pregnant with his child.

**C. Element Two: <u>Willful act in the use of the process not proper in the regular conduct of the proceeding.</u>**

Malice, ill will, or ulterior purpose in filing petition is not enough. The defendant must have misused or misapplied the judicial process to an end other than that for which it was designed to accomplish. See W. Prosser and Keeton, *Handbook on the Law of Torts* at pp. 876-

877 (3d ed), § 115 and § 121 (4th ed.); see also *Simpson, Executrix for Estate of Adair; et al. v. Laytart,* 962 S.W.2d 392 (1998); *Mullins v. Richards,* Ky. App., 705 S.W.2d 951 (1986); *Flynn v. Songer,* 399 S.W.2d 491 (Ky. 1960).

The facts alleged in the proposed Complaint present an ulterior motive for filing the Petition for Order of Protection. Coleman's sexual assault/rape allegations were shown to be baseless as the Commonwealth's Attorney, Tom Wine, a former Circuit Court judge and Court of Appeals judge, could not get a grand jury to indict Averett. It is not farfetched that Coleman wanted to use the proceedings to persuade Averett to give up his girlfriend to be with her.

Accordingly, the Motion to Amend should be granted.

Respectfully Submitted,

/ s / Aubrey Williams
AUBREY WILLIAMS
One Riverfront Plaza
Suite 1708
401 West Main Street
Louisville, KY  40202
Tel:    (502) 581-1088
Fax:    (502) 581-0595
E: aubreyw8243@bellsouth.net
**Counsel for Plaintiff**

## CERTIFICATE OF SERVICE

It is hereby certified that on July 11, 2019, the foregoing Fourth Amended Complaint was filed with the Clerk of this Court via the Court's CM/ECF electronic filing system, which will send notice of filing on even date to the individuals listed below:

Hon. Donna King Perry, and
Hon. Matthew Barszcz
Dinsmore & Shohl, LLP
101 Fifth Street, Suite 2500
Louisville, KY 40202
E: Donna.Perry@dinsmore.com
E: Matthew.Barsca@dinsmore.com
Counsel for Defendants Shirley Ann Hardy, Angela B. Taylor, PhD, Michael Mardis, PhD., University of Louisville, Board of Trustees, and Detective William Brown

Hon. Jeremiah
Frost Brown Todd, PLLC
400 West Market Street, 32nd Floor
Louisville, KY  40202
Counsel for Destinee Coleman

/ s/ Aubrey Williams