UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KEMARI AVERETT,                                                        Plaintiff,

v.                                              Civil Action No. 3:19-cv-116-DJH-RSE

SHIRLEY ANN HARDY, et al.,                                        Defendants.

* * * * *

## MEMORANDUM OPINION AND ORDER

Plaintiff Kemari Averett was accused of rape and sexual assault by another student attending the University of Louisville. Subsequently, a hearing panel found that Averett had violated the university's code of student conduct and Defendant University of Louisville (U of L) expelled him. Averett filed suit against the university, numerous administrators, the detective who investigated the alleged rape (collectively the "U of L Defendants"), and Defendant/Counter-Claimant Destinee Coleman, asserting violations of his constitutional right to due process, violations of Title IX, defamation, and intentional infliction of emotional distress. Averett moves to amend his complaint a third and fourth time, and all defendants except Coleman move to dismiss the complaint. The Court will deny Averett's motions to amend his complaint a third and fourth time and grant in part and deny in part the U of L Defendants' motion to dismiss.

### I.

The following facts are set forth in the complaint and must be taken as true for purposes of the present motion. *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)); Fed. R. Civ. P. 12(b)(6). Kemari Averett was a student at U of L in 2018. (D.N. 5, PageID # 109) (*Id*., PageID # 111) Beginning the previous year, Coleman and Averett engaged in a casual sexual relationship. (D.N. 1-3, PageID

1

# 36) Early in the morning on August 14, 2018, Coleman responded to Averett's Snapchat story, and the two agreed that she would come to Averett's room around 4:00 a.m. (*Id*., PageID # 37) According to both Averett and Coleman, Coleman entered Averett's room on campus through a door which Averett had left open for her. (D.N. 1-3, PageID # 37; D.N. 5, PageID # 122) Coleman slept next to Averett. (*Id*.) When Averett awoke later that morning, he says the two talked and "cuddled." (*Id*.) Averett claims they then had consensual sex. (D.N. 1-3, PageID # 36) But Coleman characterized the events very differently, alleging that Averett forced himself upon her. (D.N. 5, PageID # 122)

Coleman visited the university's health-services clinic where staff performed a rape-kit analysis, and she reported the incident to the U of L police. (D.N. 1-9) Defendant Detective William Brown of the U of L Police Department investigated the incident. On February 18, 2019, the matter was presented to a Jefferson County grand jury, which declined to indict Averett. (D.N. 5, PageID # 113)

Averett also faced the university's disciplinary process. Averett alleges that he first became aware of the rape allegations on October 9, 2018, when he was informed that Defendant Shirley Ann Hardy wanted to meet with him. (*Id*., PageID # 111) Hardy works as a student conduct officer—a position responsible for the implementation of the university's internal policies—for U of L. (*Id*., PageID # 109) At that meeting, Hardy informed Averett that Coleman had accused him of rape. (*Id*.) According to Averett, the next communication he received from U of L was a letter, dated November 2 but received November 6. (*Id*.) The letter charged him with violating U of L's Student Code of Conduct and set his disciplinary hearing date for November 12, 2018. (D.N. 1-1) The Code of Conduct provides that an administrative conduct meeting will be held where the accused can present evidence and cross-examine witnesses. (D.N.

5, PageID # 112) The code further provides that "[t]he Dean of Students Office staff reviews all available information with the accused student." (D.N. 1-2, PageID # 27) Averett alleges that no one from the Dean's Office reviewed the evidence with him and that Hardy, acting as U of L's lead investigator, only reached out to witnesses who could corroborate Coleman's version of events. (D.N. 5, PageID # 114; *see* D.N. 1-5)

Brown also conducted an independent criminal investigation into Coleman's allegations and obtained a search warrant for Averett's cellphone. (DN. 5-5) The cellphone contained sexually explicit videos that Coleman had sent Averett, as well as Snapchat conversations that illustrated Coleman's sexual interest in Averett. (D.N. 5, PageID # 117) Averett asserts that Brown knew about this evidence—and that Coleman tampered with it—so Brown should have volunteered himself as a witness at his hearing. (*Id.*)

On November 12, 2018, "Hardy plopped the material down on [Averett's] table a few short minutes before the hearing began." (D.N. 5, PageID # 114) The materials included potentially exculpatory medical records and witness statements, but Averett did not have time to effectively analyze the evidence. (*Id.*, PageID # 115–16) This, in turn, impacted his ability to effectively cross-examine the witnesses called at the hearing. (*Id.*) Averett had prepared a written statement for submission to the panel explaining his version of events, but on the day of the hearing Hardy forced him to truncate it to half a page. (*Id.*, PageID # 114) Averett faced a three-person panel, and although he was accompanied by an attorney, his counsel was not allowed to participate actively in the hearing. (*Id.*, PageID # 112) According to Averett, he was not permitted to object to any of the evidence presented. (D.N. 5, PageID # 115) The evidence included a newspaper article containing accusations that Averett had held a gun to his pregnant girlfriend's head. (D.N. 1-7, PageID # 59) Coleman sought and obtained a protective order from the Commonwealth after

she learned of this alleged incident. (D.N. 42-1) Ultimately, the hearing panel found by a preponderance of the evidence that Averett had violated the U of L Student Code of Conduct and recommended a punishment of expulsion to Defendant Dean Angela Taylor. (D.N. 5, PageID # 116) Taylor adopted the recommended finding and punishment, which Averett appealed to Defendant Dean Michael Mardis. (*Id.*) Mardis denied Averett's appeal on January 10, 2019. (*Id.*)

Averett filed this lawsuit on February 15, 2019. (D.N. 1) He filed his first amended complaint on February 20, 2019 (D.N. 4), and his second amended complaint on March 1, 2019. (D.N. 5) He now moves for leave to file a third and fourth amended complaint (D.N. 32; D.N. 41), which the defendants oppose. (D.N. 35; D.N. 44; D.N. 46) The U of L Defendants move to dismiss the claims against them for failure to state a claim upon which relief may be granted. (D.N. 26)

The Court will first consider Averett's motions for leave to amend his complaint a third and fourth time.

## II.

Averett seeks leave to amend his complaint a third and fourth time. While leave to amend should be "freely given when justice so requires," Fed. R. Civ. P. 15(a), the Court may deny a motion to amend under certain circumstances. *See Shane v. Bunzl Distrib. USA, Inc.*, 200 F. App'x 397, 406 (6th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). For example, denial is appropriate when the amendment seeks to add a claim that cannot survive a Rule 12(b)(6) motion to dismiss. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim

is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id.* at 679.

## A.    Third Amended Complaint

Averett first seeks to add a claim for breach of contract against U of L. (*See* D.N. 32-2) U of L is a state university, however. *See* Ky. Rev. Stat. § 164.810 (describing the University of Louisville "as a state institution"). As a state university, U of L is generally protected from suit in federal court by the Eleventh Amendment. *See Tincher v. Owsley*, 500 F. App'x 468, 472 (6th Cir. 2012) ("Public universities are protected under the Eleventh Amendment."); *Sweatt v. Univ. of Ky.*, 103 F.3d 131, 131 (6th Cir. 1996) (unpublished table decision) (noting that the plaintiff naming two state universities "as defendants was tantamount to naming the State of Kentucky as defendant"); *Hutsell v. Sayre*, 5 F.3d 996, 999–1000 (6th Cir. 1993) (finding the University of Kentucky immune from suit in federal court).

States are free to waive their sovereign immunity. *See Sossamon v. Texas*, 563 U.S. 277, 284 (2011). Kentucky has waived its sovereign immunity as to written contracts, but it has not done so for oral or implied contracts. *See Univ. of Louisville v. Rothstein*, 532 S.W.3d 644, 650 (Ky. 2017) ("Based on the plain language of the statute and our prior interpretation of KRS 44.270, we now hold that KRS 45A.245(1) waives the defense of governmental immunity in all claims based upon lawfully authorized written contracts."); *Furtula v. Univ. of Ky*, 438 S.W.3d 303, 310

(Ky. 2014), as modified (June 23, 2014) (finding that Kentucky has not waived sovereign immunity as to implied contracts); *Commonwealth v. Whitworth*, 74 S.W.3d 695, 700 (Ky. 2002) (recognizing "that a lawsuit cannot be brought against the Commonwealth to enforce oral contracts").

In this case, Averett does not allege with sufficient specificity that the parties created a written contract. While Averett broadly alleges that U of L had a "contract with Plaintiff," Averett cites to U of L's Code of Student Conduct as the only potential written contract between the parties. (D.N. 32-2, PageID # 373) But this Court and others have found that student handbooks or codes of conduct constitute written contracts only if they contain specific language indicating that the university intended to enter into a contractual relationship with the student. *See, e.g., Ali v. Univ. of Louisville*, No. 3:17-CV-00638-RGJ, 2019 WL 539098, at *9 (W.D. Ky. Feb. 11, 2019) ("Ali has not put forth any evidence demonstrating that the University intended to be bound by the documents' provisions, and thus the Student Handbook is better understood as a unilateral policy manual . . . ."); *Green v. Sandy*, No. 5:10-CV-367-JMH, 2011 WL 4688639, at *4 (E.D. Ky. Oct. 3, 2011) (finding a breach-of-contract claim premised on a university's student-athlete handbook to be barred by Kentucky's sovereign immunity). There is no allegation here that U of L's Code of Student Conduct contained language demonstrating U of L's intent to form a contract with Averett. Because Averett's motion seeks to add a claim that is barred by Kentucky's sovereign immunity, the proposed amendment is futile.

**B.      Fourth Amended Complaint**

Similarly, Averett's motion for leave to amend his complaint a fourth time seeks to add claims against U of L for violations of the Equal Protection Clause and Section 2 of the Kentucky Constitution. (*See* D.N. 42) As an initial matter, the Court notes that Averett's motion contained

6

little more than a brief recitation of Rule 15 and one paragraph stating the standard for granting leave to amend. (D.N. 41) Because Averett's motion "included virtually no supporting argument," and "did not attempt to articulate the theories supporting leave to amend in any fashion, nor did [h]e address the issues of delay, prejudice, or futility," the Court may deny his motion "on this ground alone." *Inge v. Rock Fin. Corp.*, 388 F.3d 930, 937 (6th Cir. 2004). The Court also finds, however, that denial of the fourth motion for leave to amend is appropriate because the proposed amendment is futile.

The motion contains two new claims. The first is a claim of abuse of process against Coleman and "Unknown Counsel(s)" under Kentucky law. (D.N. 42, PageID # 502) "The Kentucky Supreme Court recently has confirmed that the tort of abuse of process consists of 'two essential elements: 1) an ulterior purpose, and 2) a willful act in the use of the process not proper in the regular conduct of the proceeding.'" *Kinslow v. Fifth Third Bank, Inc*., 529 F. App'x 467, 471 (6th Cir. 2013) (quoting *Sprint Commc'ns Co., L.P. v. Leggett*, 307 S.W.3d 109, 114 (Ky. 2010)). This claim fails because Averett has not alleged facts that would satisfy the second element, which requires "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of process." *Id*. at 472 (quoting *Simpson v. Laytart*, 962 S.W.2d 392, 394–95 (Ky. 1998)).

Nothing in the proposed amended complaint asserts that Coleman or her counsel abused the criminal process. Coleman obtained an individualized protective order (D.N. 42-1), but Averett has not alleged that she used it in a way considered "not proper." *Kinslow*, 529 F. App'x at 471. Averett seems to concede this point when he states, "It is not farfetched that Coleman wanted to use the proceedings to persuade Averett to give up his girlfriend to be with her." (D.N. 52, PageID # 606) But "not farfetched" cannot substitute as the standard for surviving a motion

to dismiss. Rather, Averett must "nudge his complaint 'across the line from the conceivable to the plausible'" with factual allegations—which he has failed to do here. *Shaughnessy v. Interpublic Grp. of Cos., Inc.*, 506 F. App'x 369, 374 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 680).

Averett also seeks to add a claim described as "Denial of Equal Protection; Section 2 Kentucky Constitution," against U of L and "its employees, agents, and representatives." (D.N. 42, PageID # 505) As discussed above, suit against U of L is against the Commonwealth of Kentucky itself, and is barred by sovereign immunity absent a waiver of that protection. *See supra*, part II.A. Averett has not cited any relevant authority to establish that Kentucky waived its immunity from suit under Section 2 of the Kentucky Constitution. And cases addressing this issue hold to the contrary. *See Alexander v. Univ. of Ky.*, No. 5:10-CV-48-REW, 2012 WL 1068764, at *11 (E.D. Ky. Mar. 28, 2012) (citing *Clevinger v. Bd. of Educ. of Pike Cty.*, 789 S.W.2d 5, 9 (Ky. 1990)) (holding that Kentucky constitutional claims against "an arm of the Commonwealth" are barred by sovereign immunity); *Clark v. Kentucky*, 229 F. Supp. 2d 718, 727 (E.D. Ky. 2002) (dismissing claim on basis of sovereign immunity because the plaintiff did not cite cases establishing right to seek damages under Kentucky Constitution and "the Court can find none"). Even if Kentucky had partially waived the protection of its sovereign status, Section 2 does not provide a private right of action to sue. *Grise v. Allen*, 714 F. App'x 489, 499 (6th Cir. 2017) (citing *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 538 (Ky. 2011)) ("Kentucky law does not afford a private right of action for alleged violations of the Kentucky Constitution"); *see also Jackson v. Murray State Univ.*, 834 F. Supp. 2d 609, 615 (W.D. Ky. 2011) (dismissing claims because "Kentucky does not recognize a private cause of action under its Constitution"). Finally, states may not be sued for money damages under § 1983 because of the sovereign immunity provided by the Eleventh Amendment. *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 654

n.8 (6th Cir. 2007) (holding that for a § 1983 claim, "the state itself is not a properly named defendant, as it is shielded from suit under the doctrine of sovereign immunity") (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989)); *see also Ali*, 2019 WL 539098 at *3 ("[T]he Eleventh Amendment prohibits Ali from seeking damages under Section 1983.").

Moreover, Averett has failed to identify a specific individual associated with U of L who allegedly violated his rights under the Equal Protection Clause.  The Sixth Circuit has held that § 1983 plaintiffs must clearly allege "that they are suing the officials in their individual capacities for damages…. Failure to clearly name the officials in their individual capacities mandates the conclusion that jurisdiction is lacking over any possible claims against the officials in their individual capacities" and results in a claim that cannot withstand a motion to dismiss.  *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993) (upholding district court's denial of motion to amend and add § 1983 claim against state agency for futility).  In sum, Averett has not alleged a claim upon which relief could be granted, and the proposed amendment is therefore futile.

For the reasons explained above, the Court will deny Averett's motions for leave to file a third and fourth amended complaint.  The claims first alleged in those motions will not be incorporated into the pleadings, and the Court will not address them in its analysis of the U of L Defendants' motion to dismiss.

## IV.

The U of L Defendants' motion to dismiss addresses the four counts contained in the second amended complaint: deprivation of due process, violations of Title IX, and state-law claims of defamation and IIED.  For the following reasons, the Court will grant in part and deny in part the U of L Defendants' motion to dismiss.

## A.        Immunity

As an initial matter, although Averett did not name U of L as a defendant in Count One, the second amended complaint alleges that because Hardy, Taylor, and Mardis "were acting in their official capacity and within the scope of their employment.… Defendant University of Louisville is liable for any and all damages that may be awarded to Plaintiff." (D.N. 5, PageID # 120) Claims against U of L employees in their official capacities are claims against U of L itself. And as discussed above, U of L is an arm of the Commonwealth of Kentucky and enjoys Eleventh Amendment immunity from suit absent a statutory waiver of immunity. Moreover, " governmental entities are not subject to vicarious liability under § 1983 for the actions of their employees." *Monell v. Dep'. of Soc. Servs*, 436 U.S. 658, 694 (1978). U of L thus cannot be held liable for the alleged violations of due process by Hardy, Taylor, or Mardis.

Further, all of Averett's claims against U of L employees, and Brown as an employee of LMPD, must fail because official-capacity claims for damages against state officials are barred by the Eleventh Amendment. *See Will*, 491 U.S. at 71; *Kentucky v. Graham,* 473 U.S. 159, 169 (1985) ("[T]his [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). It is not clear from the second amended complaint whether Averett also asserts claims against Hardy, Taylor, and Mardis in their individual capacities for the alleged due-process violation. But at the motion-to-dismiss stage, the Court will draw every plausible inference in Averett's favor and will therefore evaluate whether he has alleged facts that could plausibly entitle him to relief for a violation of the Due Process Clause.

## B.        Procedural Due Process

Averett seeks redress from Hardy, Taylor, Mardis, and Brown on the ground that the procedures U of L employed throughout his disciplinary proceedings violated his rights under the

Due Process Clause of the Fourteenth Amendment. (D.N. 5, PageID # 118) "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty or 'property interests'" covered by the Constitution. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Due process protection is well-established in the academic context, and "[s]tate universities must afford students minimum due process protections before issuing significant disciplinary decisions." *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017) (citing *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 633 (6th Cir. 2005)). Suspension or expulsion results in the deprivation of a protected property interest, while "allegations of sexual assault can 'impugn [a student's] reputation and integrity, thus implicating a protected liberty interest.'" *Univ. of Cincinnati*, 872 F.3d at 399 (quoting *Doe v. Cummins*, 662 F. App'x 437, 445 (6th Cir. 2016)).

The Due Process Clause applies to a university hearing resulting in expulsion, but "the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *see Goss v. Lopez*, 419 U.S. 565, 575 (1975) ("[T]he State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause . . . ."). The Court must analyze that question by weighing the *Mathews* factors: "(1) the nature of the private interest subject to official action; (2) the risk of erroneous deprivation under the current procedures used, and the value of any additional or substitute procedural safeguards; and (3) the governmental interest, including the burden any additional or substitute procedures might entail." *Univ. of Cincinnati*, 872 F.3d at 399 (citing *Matthews*, 424 U.S. at 334–35). An accused student is entitled to "at least receive the following pre-expulsion: (1) notice of the charges; (2) an explanation of the evidence against him; and (3) an opportunity to present his side of the story before an unbiased decisionmaker." *Cummins*, 662 F. App'x at 446 (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 565–66 (6th Cir. 2011) (citing *Goss*, 419 U.S. at 581)).

*Matthews* requires the Court to consider the private interest, the benefit of additional procedures, and the government's interest along with the burden of additional processes. The Court recognizes that Averett's "private interest is significant. It extends beyond his immediate standing at [U of L] and could 'interfere with later opportunities for higher education and employment.'" *Flaim*, 418 F.3d at 638 (quoting *Goss*, 419 U.S. at 575). Further, the Court acknowledges "the seriousness and the lifelong impact that expulsion can have," *id.*, and the "immediate and lasting impact on a student's life" that follows a label of sex offender. *Doe v. Baum*, 903 F.3d 575, 582 (6th Cir. 2018). The Court will therefore consider whether Averett has pleaded facts showing that the *Matthews* factors balance out in his favor.

### 1.    Hardy, Taylor, and Mardis

Averett alleges that Defendants Hardy, Taylor, and Mardis conducted the disciplinary proceedings and are therefore liable in their individual capacities for damages under § 1983. Specifically, Averett's second amended complaint alleges that he received insufficient notice and was subjected to biased decisionmaker.

### a.    Notice

Averett first argues that he was provided insufficient notice of the case against him. (D.N. 5, PageID # 114) The requirement that the accused receive notice of the charge against him "is one of the most fundamental aspects of due process." *Flaim*, 418 F.3d at 638. A student has received adequate notice under the due-process requirements if he "had sufficient notice of the charges against him and a meaningful opportunity to prepare for the hearing." *Jaksa v. Regents of Univ. of Mich.*, 597 F. Supp. 1245, 1250 (E.D. Mich. 1984), *aff'd* 787 F.2d 590 (6th Cir. March 20, 1986) (Table). In *Doe v. Miami University*, a female student, Jane, accused the plaintiff, John, of sexual misconduct. 882 F.3d 579 (2018). The university found John liable for violating the

student code of conduct. *Id.* at 587. He was suspended, and he later sued the university. The Sixth Circuit found that because the decision against John was at least partially supported by evidence the university did not provide him, he had "alleged a cognizable due-process violation." *Id.* at 603. This, combined with John's allegation that he had faced a biased adjudicator, was enough for the Sixth Circuit to hold that John had sufficiently pleaded a procedural due-process claim—and reverse the district court's dismissal of that claim. *Id.* at 604.

Similarly, here, Averett alleges that Hardy did not provide him with the materials compiled against him until the day of his hearing, in violation of the U of L Code of Student Conduct. (D.N. 5, PageID # 114) The Code states that "all available information" will be reviewed with the accused student prior to the hearing. (D.N. 1-2, PageID # 27) Averett denies that such a meeting ever occurred. (D.N. 5, PageID # 114) Standing alone, a university's failure to adhere to internal policies "does not give rise to a procedural due process violation.…The Constitution does require, however, that the student be provided the evidence against him." *Miami Univ.*, 882 F.3d at 603. Much like in *Doe v. Miami University*, here Averett alleges that Hardy—an agent of the university—intentionally failed to provide him with accessible critical evidence in violation of its own policies. (D.N. 5, PageID # 115); *see Miami Univ.*, 882 F.3d at 603 (finding that it was "plausible to infer" that the conduct officer with access to plaintiff's disciplinary file violated due process by denying plaintiff access to the file).

Averett also alleges that his inability to access exculpatory evidence until the day of the hearing impaired his ability to effectively cross-examine witnesses. (D.N. 5, PageID # 115) When sexual misconduct is alleged and the credibility of antagonistic witnesses plays a central role, "[c]ross-examination is essential . . . . it does more than uncover inconsistencies—it 'takes aim at credibility like no other procedural device.'" *Baum*, 903 F.3d at 582 (finding plaintiff's inability

to cross-examine live witnesses showed plausible due process violation). U of L has a strong interest in handling allegations of sexual misconduct in a fair manner. At this early stage, Averett's claim supports a conclusion that he was denied due process when he was denied the "opportunity to 'respond, explain, and defend'" himself at his conduct hearing. *Cummins*, 662 F. App'x at 446 (quoting *Flaim*, 418 F.3d at 635); *see Baum*, 903 F.3d at 581 ("When it comes to due process, the 'opportunity to be heard' is the constitutional minimum").

### b. Bias

Averett asserts that Hardy was biased against him. Although Hardy did not expel Averett herself, she sat on the panel that recommended Averett's expulsion. (D.N. 5, PageID # 115) It is "well established that school-disciplinary committees are entitled to a presumption of impartiality, absent a showing of actual bias." *Cummins*, 662 F. App'x at 449. Averett must therefore "allege[] sufficient facts plausibly indicating that [Hardy's] ability to be impartial 'had been manifestly compromised'" to make the requisite showing. *Miami Univ.*, 882 F.3d at 601 (quoting *Heyne*, 655 F.3d at 538).

Taking all of Averett's factual allegations as true, the Court finds that Averett has plausibly alleged that Hardy was actually biased. Her role as both investigator and presiding hearing officer contributed to a violation of due process if her "involvement in an incident created a bias such as to preclude h[er] affording the student an impartial hearing." *Id.* (quoting *Brewer ex rel. Dreyfus v. Austin Indep. Sch. Dist. No. 2*, 826 F.2d 260, 264 (5th Cir. 1985)). Hardy was involved in the investigation from the outset. According to Averett, Hardy only contacted witnesses who would support Coleman's version of events. (D.N. 5, PageID # 114) Specifically, Averett alleges that Hardy failed to call Detective Brown to testify despite Brown's knowledge of "exculpatory evidence"—explicit messages and videos—that Brown recovered from Averett's cellphone. (*Id.*,

PageID # 117)  These facts support a plausible inference that Hardy only sought evidence that confirmed Averett's guilt.  Averett further claims both that Hardy admitted prejudicial and irrelevant materials into evidence at the hearing and that Hardy forced him to truncate his written witness statement which prevented him from fully presenting his defense.  (*Id*., PageID # 115) From these allegations the Court may plausibly infer that Hardy's impartiality was "manifestly compromised" and conclude that Averett has alleged sufficient facts supporting a finding of actual bias. *Miami Univ*., 882 F.3d at 601 (finding that plaintiff sufficiently alleged that school official was biased by plausibly inferring that he decided plaintiff's guilt prior to the hearing and impermissibly served in dual roles)  Averett's claim against Hardy thus survives this early stage.

Despite naming Taylor and Mardis in his second amended complaint, Averett has not alleged facts supporting an inference that Taylor or Mardis's actions violated due process.  Their only alleged involvement was ordering Averett's expulsion and denying his appeal, respectively. (D.N. 5, PageID # 116)  The Court thus cannot find that Averett has sufficiently pleaded this claim against them, and will grant the U of L Defendants' motion to dismiss the claims against Taylor and Mardis.

### 2. Detective Brown

Averett appears to allege that Detective Brown violated the Due Process Clause by investigating the alleged rape.  (D.N. 5, PageID # 113)  According to the second amended complaint, Brown "aided, assisted, and advised" Hardy in her preparation for the disciplinary hearing, while "simultaneously pursuing an indictment against" Averett in state court.  (*Id*.) Averett alleges that Brown knew that Coleman tampered with "evidence" on Averett's phone. (*Id*.; D.N. 29-1, PageID # 381)  Claims against law-enforcement officers are generally brought pursuant to the Fourth Amendment's protections against malicious prosecution or falsification of

evidence, as pointed out by the U of L Defendants in their motion to dismiss. (D.N. 26-1, PageID # 298) Averett did not address this argument in his response or mention his claims against Brown at all. But even if Averett had alleged that Brown's investigation was somehow deficient, "there is no constitutionally protected right to the manner in which a criminal investigation is conducted"—let alone an informal university investigation. *Garner v. Harrod*, 656 F. App'x 755, 760 (6th Cir. 2016). And although Averett is entitled to a criminal prosecution free from fabricated evidence, *Sykes v. Anderson*, 625 F.3d 294, 319 (6th Cir. 2010) (finding *Brady*-based § 1983 due-process claim against police officer cognizable), here Averett has neither alleged that Brown fabricated evidence, nor has he faced criminal prosecution. *See United States v. Mallory*, 902 F.3d 584, 596 (6th Cir. 2018) (finding no constitutional violation where plaintiff "allude[d] to fabrication of evidence, [but] fail[ed] to specify any evidence the investigator fabricated.") Without allegations to support a *Brady*-style claim, Averett's claim against Brown fails.

In sum, Averett has alleged facts to support his due-process claim against Hardy based on his claims that Hardy was not an impartial adjudicator and that she deprived him of the evidence against him so that he could not effectively participate in his hearing. He has not alleged sufficient facts to allow his due-process claims against Taylor, Mardis, or Brown to survive the U of L Defendants' motion to dismiss.

## C.     Title IX

Averett claims that the University of Louisville and its board of trustees violated his rights under Title IX. Title IX prohibits academic institutions that receive federal funds from discriminating against students on the basis of gender. 20 U.S.C. § 1681(a)(1). "Title IX is enforceable through a judicially implied private right of action, through which monetary damages are available." *Klemencic v. Ohio State Univ.*, 263 F.3d 504, 510 (6th Cir. 2001). The Sixth

Circuit has "recognized, although never explicitly adopted in a published opinion, at least four theories of liability that a student who is 'attacking a university disciplinary proceeding on grounds of gender bias' can potentially assert under Title IX." *Miami Univ.*, 882 at 589 (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)). Averett's claims are best suited to analysis under the "erroneous outcome" theory, which Averett cites in his response. (D.N. 29-1, PageID # 330–31) The erroneous-outcome theory requires that a plaintiff "plead: (1) 'facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding' and (2) a 'particularized…causal connection between the flawed outcome and gender bias.'" *Cummins*, 662 F. App'x at 452 (quoting *Yusuf*, 35 F.3d at 715). Ultimately, the plaintiff must allege that "a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender." *Cummins*, 662 F. App'x at 452 (citing *Mallory*, 76 F. App'x at 638–39).

The Court will consider the second prong of the test first. Factual allegations that satisfy this requirement "might include, inter alia, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Miami Univ.*, 882 F.3d at 593 (quoting *Yusuf*, 35 F.3d at 715). In *Doe v. Miami University,* the Sixth Circuit found that the plaintiff sufficiently pleaded facts supporting a Title IX violation under the erroneous-outcome theory. *Id*. at 594. There, the plaintiff alleged that the university engaged in a statistically supported "pattern of gender-based decision-making;" the plaintiff's hearing panel credited the female student's inconsistent version of a sexual encounter over a male's; and the university was subject to external pressure from both the federal government and other lawsuits accusing the university of failing to protect female students from sexual assault. *Id*. at 592–93. These facts created "the plausible inference of intentional gender discrimination" necessary to survive a motion to dismiss. *Id*. at 594. Factual allegations that the

hearing panel "credited exclusively female testimony…and rejected all of the male testimony" can also support a claim of gender discrimination. *Baum*, 903 F.3d at 586. The Sixth Circuit found that the plaintiff in *Doe v. University of Dayton*, did not sufficiently plead a claim under Title IX. 766 F. App'x 275 (6th Cir. 2019). He alleged that the university found him liable for sexual assault because it "desire[d] to avoid further federal scrutiny and negative publicity" following an investigation into its policy for handling sexual-misconduct complaints. *Id*. at 281. Even combined with assertions of gender bias within the hearing board and the fact that the university virtually always brought sexual-assault proceedings against male students, the Sixth Circuit held that the allegations were insufficient to sustain a Title IX claim. *Id*.

Here, Averett does not allege enough for a claim of gender-based discrimination under the erroneous-outcome theory. Unlike the scenario in *Doe v. University of Miami*, Averett has not alleged that the hearing panel credited Coleman's testimony over his because he is male; asserted that U of L has engaged in a pattern of discrimination against men; or alleged facts showing that U of L was subject to specific external pressures. Instead, Averett alleges that "the University acted out of fear of the 'Me Too Movement'" (D.N. 5, PageID # 122), and points to components of his disciplinary proceedings that he considers unfair. (D.N. 29-1, PageID # 331) He claims that Brown and Hardy coached the adverse witnesses, asked Averett, "If you were in [Coleman's] place, how would you feel?," and failed to contact witnesses who would have supported Averett's case. (*Id*.) But Averett does not allege any facts showing that these perceived procedural shortcomings were causally linked to gender discrimination. *See Univ. of Dayton*, 766 F. App'x at 275 ("[T]hese generalized, conclusory statements, devoid of underlying factual support, do not suffice to allege a *particularized* causal connection between gender bias and Doe's suspension."); *cf. Doe v. Purdue Univ*., 928 F.3d. 652, 669–70 (7th Cir. 2019) (finding that plaintiff sufficiently

alleged that panel believed female testimony over male testimony and cited gender-biased social media post). Further, Averett has failed to allege that the university was susceptible to particular external pressures or to offer any factual basis for U of L's alleged motivation for discriminating against him. *See Cummins*, 662 F. App'x at 453 (upholding district court's grant of defendant's motion to dismiss because plaintiff did not allege sufficiently specific external pressures). Averett's pleaded facts do not amount to more than "allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination," which "is not sufficient to survive a motion to dismiss." *Id.* at 452 (quoting *Yusuf*, 35 F.3d at 715).

**D.      Defamation**

In the third count of the second amended complaint, Averett alleges that Hardy, Taylor, and Mardis defamed him in violation of state law. (D.N. 5, PageID # 123–24) "Under Kentucky law, defamation consists of four elements: (1) a defamatory statement; (2) about the plaintiff; (3) that is published; and (4) that causes injury to reputation." *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003) (citing *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981)). But "[i]n Kentucky, 'truth is a complete defense and thus a defendant able to prove the truth of the defamatory statement at issue cannot be held liable for defamation.'" *Hodges v. Ford Motor Co.*, 272 F. App'x 451, 454 (6th Cir. 2008) (quoting *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 795–96 (Ky. 2004), *abrogated on other grounds*, *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014)).

Here, "accepting as true all well-pleaded allegations in the complaint," *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 246 (6th Cir. 2012), Averett alleges that Hardy, Taylor, and Mardis "intentionally and/or negligently published or caused to be published to others

and the local media *claims* that Plaintiff raped and sexually assaulted Destinee Coleman on or about August 14, 2018." (D.N. 5, PageID # 124) (emphasis added)  It is undisputed that Coleman claimed that Averett raped her.  (*Id.*)  The U of L Defendants point out the uncontested nature of this statement and the subsequent inapplicability of defamation law in their motion to dismiss. (D.N. 21, PageID # 302–03)  Averett failed to respond to that argument or clarify the allegations in his response.  (D.N. 29)  It is Averett's "obligation to provide the 'grounds' of his 'entitlement to relief,'" and taking his complaint as pleaded, the Court finds that Averett has alleged a true statement as the basis for his defamation claim against the U of L Defendants.  *Republic Bank & Tr. Co.*, 683 F.3d at 246–47 (quoting *Twombly*, 550 U.S. at 555).  Because truth is a complete defense to defamation, Averett's claim fails as a matter of law.  *See Gahafer*, 328 F.3d at 861; *Marcus & Millichap Real Estate Inv. Brokerage Co. v. Skeeters*, 395 F. Supp. 2d 541, 554 (W.D. Ky. 2005) ("Truth is an affirmative defense and complete defense to a defamation claim.").

**E.      IIED**

The fourth and final claim in Averett's second amended complaint asserts that Brown and Hardy are liable for the tort of Intentional Infliction of Emotional Distress.  (D.N. 5, PageID # 125–26)  Kentucky requires that the plaintiff allege four elements to establish a claim of IIED:

> 1. The wrongdoer's conduct must be intentional or reckless;
> 2. The conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;
> 3. There must be a causal connection between the wrongdoer's conduct and the emotional distress; and
> 4. The emotional distress must be severe.

*Ferrer v. MedaSTAT USA, LLC*, 145 F. App'x 116, 120 (6th Cir. 2005) (quoting *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 65 (Ky. 1996)).  The second element, "often the key issue in an IIED claim," sets a high standard for outrageous conduct, *id.*, requiring conduct that is "a deviation from all reasonable bounds of decency and is utterly intolerable in a civilized community." *Sacharnoski*

*v. Capital Consol., Inc.*, 187 F. Supp. 2d 843, 845 (W.D. Ky. 2002) (quoting *Craft v. Rice*, 671

S.W.2d 247, 249 (Ky. 1984)).  In *Stringer*, the Kentucky Supreme Court summarized the kind of

conduct that amounts to extreme and outrageous in the IIED context:

> Where the defendants: (1) harassed the plaintiff by keeping her under surveillance at work and home, telling her over the CB radio that he would put her husband in jail and driving so as to force her vehicle into an opposing lane of traffic; (2) intentionally failed to warn the plaintiff for a period of five months that defendant's building, in which plaintiff was engaged in the removal of pipes and ducts, contained asbestos; (3) engaged in a plan of attempted fraud, deceit, slander, and interference with contractual rights, all carefully orchestrated in an attempt to bring [plaintiff] to his knees; (4) committed same-sex sexual harassment in the form of frequent incidents of lewd name calling coupled with multiple unsolicited and unwanted requests for homosexual sex; (5) was a Catholic priest who used his relationship [as marriage counselor for] the [plaintiff] husband and the wife to obtain a sexual affair with the wife; (6) agreed to care for plaintiff's long-time companion-animals, two registered Appaloosa horses, and then immediately sold them for slaughter; and (7) subjected plaintiff to nearly daily racial indignities for approximately seven years.

*Bargo v. Goodwill Indus. of Ky., Inc.*, 969 F. Supp. 2d 819, 827 (E.D. Ky. 2013) (quoting *Stringer*,

151 S.W.3d at 789–90) (internal citations omitted).

Averett's allegations do not rise to the level of extremity and outrageousness necessary to

support a claim of IIED under Kentucky law.  Averett asserts that Brown assembled his case to

present to the grand jury while pretending to investigate the case for the hearing board, and that

Brown and Hardy "intentionally withheld exculpatory evidence from the Grand Jury."  (D.N. 5,

PageID # 125)  The parties do not cite, nor can the Court locate, any cases applying Kentucky law

that have found that the acts of a detective investigating a possible crime constitute extreme and

outrageous conduct.  Non-binding precedent holds, instead, to the contrary.  *See Ricchuite v.

Johnson*, No. 1:14-CV-104-GNS-HBB, 2017 WL 938328, at *13–14 (W.D. Ky. Mar. 9, 2017)

(finding that sheriff-defendant's act of following plaintiff and surveilling his home did not rise to

level of extreme and outrageous conduct); *Davis v. McKinney*, No. 4:08-CV-00117-M, 2010 WL

1416737, at *3 (E.D. Ky. April 1, 2010) (finding that defendant's conduct of presenting case to

the grand jury, arresting, and beginning to prosecute plaintiff fell "far short" of extreme and outrageous).  And *Collick v. William Paterson University*, which Averett cites, does not involve a claim of IIED; rather, it addresses a state-law contract claim and is therefore inapposite.  Civ. No. 16-471 (KM) (JBC), 2016 WL 6824374, at *1 (D.N.J. Nov. 17, 2016), *aff'd in part, remanded in part*, 699 F. App'x 129 (3d Cir. 2017).

## VI.

Averett has pleaded factual allegations sufficient to survive the U of L Defendants' motion to dismiss as to Count One against Hardy in her individual capacity.  Averett's claims of Title IX violations, defamation, and IIED against the U of L Defendants are not, however, grounded upon the factual foundation necessary to state a claim upon which relief may be granted.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     Averett's motions to amend his complaint (D.N. 32; D.N. 41) are **DENIED**.

(2)     The U of L Defendants' motion to dismiss (D.N. 26) is **GRANTED** in part.  The motion is **DENIED** as to Count 1 against Hardy.  The motion is **GRANTED** as to Counts 2, 3, and 4 against Defendants University of Louisville, University of Louisville Board of Trustees, Hardy, Taylor, Mardis and Brown, and Count 1 as to Taylor, Mardis, and Brown.