UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-00116-BJB

**KEMARI AVERETT**                                                                            **PLAINTIFF**

**VS.**

**SHIRLEY ANN HARDY, et al.**                                       **DEFENDANTS**

**MEMORANDUM OPINION
AND ORDER**

Presently before the Court is Plaintiff Kemari Averett's Motion to Compel Defendant Destinee Coleman to Respond to Discovery Requests. (DN 94). Defendant Destinee Coleman responded and filed a contemporaneous motion for protective order. (DN 98).[1] Averett filed a reply that supports his motion to compel and opposes Coleman's motion for protective order. (DN 100). These matters have been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A). (DN 80).

I. Background

Kemari Averett ("Averett") and Destinee Coleman ("Coleman") were students at the University of Louisville ("U of L") in 2018. (DN 5, at ¶¶ 6, 13). Averett was attending U of L on a football scholarship. (*Id.* at ¶¶ 6, 14). Coleman and Averett were engaged in a casual sexual relationship. (DN 1-3, at p. 2). One night in mid-August, the two had a sexual encounter in Averett's campus room. (*Id.* at p. 3). The details of that encounter are disputed by the parties. Averett claims that he and Coleman talked, cuddled, and had consensual sex. (*Id.*). Coleman asserts that Averett forced himself on her. (DN 24, at ¶¶ 52, 57). Following this encounter, Coleman visited a university health clinic and staff performed a rape-kit analysis. (*Id.* at ¶¶ 12-13). Coleman also reported the incident to U of L and the police department. (*See id.* at ¶¶ 10-16).

---

[1] It appears that Defendant Destinee Coleman's Motion for Protective Order and Response to Plaintiff's Motion to Compel was filed twice at DN 98 and DN 99 with different labels. Because both DN 98 and DN 99 are the same document, the Court will simply cite to DN 98 for the purpose of this Order.

After conducting an investigation, U of L charged Averett with violating provisions in section 10 of its Student Code of Conduct. (DN 1-1). His student disciplinary hearing occurred on November 12, 2018. (*Id.*). The hearing panel ultimately recommended that Averett be suspended indefinitely from U of L and banned from campus. (DN 24, at ¶¶ 28-29). Dean Angela Taylor adopted the recommendation, which Averett appealed. (DN 5-2). On January 10, 2019, the University denied Averett's appeal. (DN 5, at ¶ 32).

The next month, Averett filed the instant lawsuit against Coleman, U of L, Student Conduct Officer Shirley Hardy, Dean Taylor, Dean Hardis, and the U of L Board of Trustees. (DN 1). Specifically, as to Coleman, Averett alleged defamation of character for her falsely accusing him of rape and publishing the false allegations on social media. (*Id.* at ¶¶ 53-57). Three days after Averett initiated this litigation, a Jefferson County Grand Jury declined to indict him on charges related to the alleged sexual assault. (DN 5, at ¶ 25).

Coleman has filed counterclaims against Averett for battery, assault, intentional infliction of emotional distress, abuse of process, and invasion of privacy. (DN 24, at pp. 6-10). Averett maintains that the sexual encounter was consensual. (DN 28, at ¶ 4).

Currently, Averett has filed a motion to compel discovery from Coleman. (DN 94). Averett seeks responses to Interrogatory Nos. 7, 9, 10, 11, 12, 13, 14, 19, 20, 24, 25, 26 and Request for Production No. 14. (*Id.*). Coleman characterizes Averett's Motion as a "thinly veiled attempt" to further harass and embarrass her as a sexual-assault victim and to confuse the legal issues in the case. (DN 98). Because Coleman believes the requested information, regarding her prior sexual history and sexual encounters, is not relevant to this case, she requests entry of a Rule 26(c) protective order to prohibit such discovery. (*Id.* at p. 2).

## II. Standard of Review

Trial courts have wide discretion in dealing with discovery matters. *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981). The "scope of discovery" encompasses "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Relevance is construed broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) (citation omitted). In analyzing proportionality, the Court must consider the need for the information sought based upon "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Federal Rule of Civil Procedure 37 allows a party to move for an order compelling disclosure or discovery when "a party fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(iii), (iv). Under Rule 37, an "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." *Id.* (a)(4).

When a responding party claims discovery will cause "annoyance, embarrassment, oppression, or undue burden or expense," the Court may, for good cause issue a protective order pursuant to Rule 26(c) that forbids or limits the discovery. Fed. R. Civ. P. 26(c).

## III. Analysis

The disputed discovery requests can generally be placed in two categories: (1) requests for Coleman's medical records (INT Nos. 7, 10, 11, 12, 13, and 14); and (2) requests for information

regarding Coleman's sexual history (INT Nos. 19, 20, and 24). The remaining discovery requests (INT Nos. 9, 25, 26, and RFP No. 10) will be addressed separately.[2]

### A. Coleman's Medical Records

Averett first claims he is entitled to discover Coleman's medical records because Coleman claims to have developed motor tics and suffered emotional damage from her sexual encounter with Averett. (DN 94, at p. 3). He also claims that during his student conduct hearing, Defendants proffered certain medical records, which opened the door for him to further probe her medical history for impeachment purposes and to rebut the medical evidence previously presented. (*Id.* at pp. 5-6). Averett submits that medical records, noting that Coleman was physically "ok" and appeared calm after the encounter, contradict Coleman's testimony and statements her friends made during the hearing that Coleman was withdrawn and unable to socialize following the alleged assault. (*Id.* at p. 5).

Coleman initially objected to INT Nos. 7, 10, 11, 12, 13, and 14 based on doctor/patient confidentiality. (*See* DN 94-1, at pp. 8-11). But in her supplemental discovery responses, Coleman removed any objection to privilege and clarified that as to INT Nos. 11, 12, and 13, she "attached medical records that speak for themselves." (DN 98-2, at p. 6). Coleman claims that she has provided medical records and psychological or mental health treatment records related to this action, along with "all documentation concerning the rape kit (SANE exam)[.]" (DN 98, at p. 3).

Averett replies that Coleman's alleged production of medical records is "disingenuous" because the only records she has produced "are those relating to the alleged rape, i.e., several rape kits and exams." (DN 100, at p. 2).

---

[2] The Court notes that it appears Averett relied on Coleman's initial discovery responses in bringing the present Motion to Compel. (*See* DN 94-1, DN 94-2). Coleman, however, points out that she served supplemental discovery responses on Averett before his Motion to Compel was filed. (DN 98-2). In evaluating the parties' arguments, the Court will rely on the supplemental responses that Coleman provided in February of 2021.

4

First, Coleman's medical records relating to her rape are undoubtedly relevant to her counterclaims of assault, battery, and intentional infliction of emotional distress. And by producing the medical records responsive to INT Nos. 11, 12, and 13, Coleman has satisfied her obligation. Averett even admits in his reply that Coleman has provided medical records pertaining to the alleged rape. (*See* DN 100, at p. 2).

The remaining dispute is the sufficiency of Coleman's responses to INT Nos. 7, 10, and 14. INT No. 7 asks Coleman to produce names and addresses for every physician, psychologist, psychiatrist, counselor, or other health practitioner, whether licensed or unlicensed, who has examined or treated her for "her entire life."[3] This request is not narrowly tailored to the issues in this case. While some of Coleman's medical providers pre-dating or post-dating the sexual encounter may have information relevant to her counterclaims, the Court will not require she produce such information for her entire life. Instead, Coleman must only produce the names and contact information for any licensed or unlicensed physical or mental health practitioner that: (1) predating the alleged rape saw and/or treated her for the injuries and damages she now claims she sustained as a result of the alleged rape; and (2) postdating the alleged rape saw and/or treated her for the injuries and damages she claims to have sustained as a result of the alleged rape. Coleman's duty to provide her physicians' names and contact information is not obviated by her production of medical records. Coleman shall supplement her response to INT No. 7 within fourteen days entry of this Order.

INT No. 10 requests the names of any person whom Coleman spoke to at "Peacc" about her allegations and what she said, how the person responded, and any result the person took upon

---

[3] The Court notes that Coleman did not produce her supplemental response to Averett's INT No. 7. Her excerpted responses begin with INT No. 9. (DN 98-2, at p. 4).

hearing the allegations.[4] (DN 94-1, at p.9). Coleman responded by stating she spoke with Tisha Pletcher. (DN 94-1, at p. 10; 98-2, at p. 5). Averett takes issue with Coleman's refusal to describe the contents of her conversations with Pletcher. (DN 94, at p. 6). He alleges that Pletcher's admission in a November 9, 2018 letter that "PEACC provided support to [Coleman] on a regular basis from August 14 through the present time" supports his discovery request. The Court finds the requested information is relevant to Coleman's counterclaims of battery, assault, and IIED. Coleman must supplement her response to INT. No. 10, to the best of her memory, within fourteen days entry of this Order.

Lastly, INT No. 14 sought that with respect to any injury she allegedly received from the sexual encounter that Coleman state whether she experienced such injury prior to the encounter or after the encounter. (DN 94-1, at pp. 10-11). Coleman responded that "no, she has not experienced any such an injury before or since." (DN 98-2, at p. 6). Coleman's response is clear and unequivocal. Moreover, Coleman's forthcoming supplementation to INT No. 7 will provide information about injuries she sustained prior to or after the sexual encounter for which she currently seeks redress. No further supplementation of this response will be required.

B. Coleman's Sexual History

Averett also challenges Coleman's responses to three interrogatories requesting information about her sexual history. In INT No. 19, Averett seeks Coleman identify her sexual history with him, including when, where, and how many times they had sex and whether Coleman had to "self-lubricate" or whether Averett lubricated her before having sex. (DN 94-1, at p. 11). In INT No. 20, Averett asks Coleman to identify whether she was having sex with "other football players and other men" while having sex with him. (*Id.* at p. 12). Specifically, Averett requests

---

[4] The Prevention, Education, and Advocacy on Campus and in the Community (PEACC) Center is a division of U of L's Campus Health Services. (*See* DN 94-8).

contact information for these individuals, whether they are football players, whether she had to "self-lubricate prior to having sex" or "whether the man would lubricate [her]," and how many times she had sex with these individuals. (*Id.*). Lastly, INT No. 24 requests that Coleman describe her sex life after the alleged rape. (*Id.* at p. 13). Coleman objected to these requests and "all lines of inquiry relating to her sexual history and past sexual experiences" based on Federal Rule of Evidence 412. (*See* DN 94-1, at pp. 11-15). This information, Coleman maintains, has no bearing on the likelihood of her being a victim of sexual assault. (*Id.*).

Averett now claims these requests "go to the very heart of this case" by challenging Coleman's accusations and the criminal investigation by U of L. (DN 94, at p. 7). He claims FRE 412 does not exempt Coleman from answering these interrogatories. (*Id.*). Coleman responds that, under FRE 412, Averett has not demonstrated that the probative value of evidence regarding her sexual history outweighs the prejudice she would suffer from disclosing such information. (DN 98, at p. 6). Coleman contests Averett's argument that she "opened the door" to admission of this evidence simply because U of L introduced evidence at the Title IV hearing that Coleman had sex with another football player around the time of the alleged rape. (*Id.* at pp. 10-11). She distinguishes that she has neither introduced any evidence nor made any arguments concerning her past sexual history in this case. (*Id.* at p. 11). Because Averett has no legal justification for discovery of this information, Coleman believes he is simply trying to disparage her and cause her further injury and embarrassment. (*Id.* at pp. 11-12).

As discussed above, Federal Rule of Civil Procedure 26(b)(1) broadly defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The Rule goes on to state that information may be discoverable that may not ultimately be admissible. *Id.*

Despite the far-reaching scope of discovery under Rule 26, the parameters are narrowed when a party attempts to use discovery as a tool of oppression or harassment. This balance is reflected in Federal Rule of Evidence 412, sometimes referred to as the rape-shield law. FRE 412 bars admission of evidence "offered to prove that a victim engaged in other sexual behavior" or "offered to prove a victim's sexual predisposition" in proceedings involving alleged sexual misconduct. Fed. R. Evid. 412. There is one exception to this Rule in civil cases: the court "may admit evidence offered to prove a victim's sexual behavior or sexual predisposition if its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." *Id.* The Rule further prohibits evidence of a victim's reputation unless the victim has placed it in controversy. *Id.*

Although FRE 412 is an evidentiary rule, governing admissibility not discovery, its advisory committee notes direct that, "[i]n order to not undermine the rationale of Rule 412," courts should enter appropriate protective orders under Rule 26(c) to protect victims against unwarranted inquiries. Fed. R. Evid. 412 advisory committee's note to 1994 amendment. The advisory committee notes further instruct that courts should presumptively enter protective orders barring discovery of sexual behavior or predisposition unless the party seeking discovery shows that the requested evidence "would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery." *Id.* Courts now routinely construe FRE 412 as limiting the scope of discovery into a litigant's sexual history in a civil action. *See T.C. on behalf of S.C. v. Metro. Gov. of Nashville & Davidson Cnty. TN,* Case Nos. 3:17-CV-01098, 3:17-CV-01159, 3:17-CV-01209, 3:17-CV-01277, 3:17-CV-01427, 2018 WL 3348728, at *9 (M.D. Tenn. July 9, 2018) (collecting cases).

As to INT No. 19, Averett vaguely asserts that this information "goes to the very heart of this case." He expounds that information about his and Coleman's sexual history together is relevant to Coleman's accusations, Averett's responses, and U of L's investigation. Because the circumstances surrounding the alleged assault are in dispute, and Averett has asserted the defense of consent, the Court agrees that discovery directed at the parties' past relationship, if such a relationship existed, will be permitted. But to comply with the public policy concerns in FRE 412, the Court will limit the scope of this Interrogatory. Coleman will be required to answer subparts (a)-(c) of INT No. 19, identifying when, where, and how many times she and Averett have had sex. Coleman will not be required to answer subparts (d) and (e) regarding lubrication because Averett has not demonstrated how the minimal probative value of this information outweighs the prejudicial impact disclosure could have on Coleman.

To support INT No. 20's relevance, Averett states that during the student conduct hearing, another defendant introduced statements made by Averett, Coleman, and the U of L Police Department "that Coleman was plagued by vaginal dryness, and that [Averett], and other individuals with whom she had sex, would get her wet by putting saliva on their fingers." (DN 94, at p. 7). Coleman's sexual history with other individuals, even during the same time when she was sexually active with Averett, does not bear on whether the August 2018 encounter was consensual. A party's welcoming of sexual advances from certain individuals or at certain times does not bear on the emotional trauma an individual may feel from sexual contact that is unwelcome. *T.C.,* 2018 WL 3348728, at *9 (affirming the same principles in sexual harassment scenario). Sexual assault is no less traumatic to a person with previous sexual experience than a person with none. *See id.* For decades federal district courts have rejected the "hollow" theory that an individual's private sexual history is relevant to whether an unrelated sexual contact was wanted. *Id.* (collecting cases).

This information is no less discoverable when considering Averett's claims of Coleman's vaginal dryness. Averett attempts to tie this topic to the injuries that Coleman claims she sustained as a result of the alleged rape. But, again, the minimal relevance this information has to Coleman's claimed injuries is strongly outweighed by the potential for such information to embarrass, harass, or oppress Coleman.

Several comments in Averett's reply brief suggest that he seeks the information regarding Coleman's sexual history with other individuals and alleged predisposition to harass and embarrass Coleman. For instance, Averett refers to Coleman's "unabashed sex life." (DN 100, at pp. 1-2). Averett also states that none of the evidence Coleman has produced disproves his "clear and convincing proof that Coleman invited herself into his bed with one objective, and that was to have sex which she had been chasing him for a period of several weeks, and retaliated when he admitted that he had gotten his white girlfriend pregnant." (*Id.* at p. 2). This statement is extraneous to the discovery issues from Averett's motion.

A letter from Averett's counsel allegedly attempting to resolve the present discovery dispute in February of 2021 further demonstrates Averett's underlying motivations. (DN 89-1). He responded to Coleman's objections under FRE 412 by stating: "Your position is as porous as a water sieve if for no other reason it discounts the evidence of your client's salacious and promiscuous behavior." The letter also claimed Averett had a right to know about Coleman's other sexual relationships because "[t]he evidence of record reveals that Ms. Coleman had a fetish for football players." These statements and arguments blatantly violate the spirit of FRE 412, by seeking information about a victim's sexual history or sexual predisposition, simply to stereotype her and harm her reputation. The Court, therefore, will grant Coleman's request for a protective order prohibiting discovery of her sexual history with other individuals.

As for INT No. 24, Averett believes information about Coleman's sexual history following the alleged rape is relevant for impeachment purposes. Averett compares statements from the student conduct hearing that Coleman was no longer sexually active because of the alleged assault to Coleman's statement at a U of L health appointment several weeks after the assault that she was sexually active. (DN 94, at p. 2). While the Court agrees that information about Coleman's sexual history could bear on her counterclaims, most directly her claim of IIED, such discovery should not be unlimited. Coleman shall supplement her response to INT No. 24 to identify whether she has been sexually active following the alleged rape and, if so, when she became sexually active again. This will provide Averett with the impeachment material he desires. However, Coleman will not be required to provide any details regarding any of her sexual activity following the alleged assault. The minimal probative value of these details is greatly outweighed by the potential for embarrassment and harm to Coleman.

The Court reiterates that FRE 412 was enacted, in part, to encourage victims to come forward when they have been sexually assaulted. Advisory Committee Notes. For these reasons, the Court finds good cause for entry of a protective order as to INT Nos. 19, 20 and 24 as follows. Coleman must respond to Averett's request in INT No. 19(a)-(c) regarding her sexual history with Averett. Coleman also must respond to INT No. 24 by identifying whether Coleman was sexually active following the alleged rape, and if so, when she became sexually active after the alleged rape. Coleman will not be required to respond to INT No. 19(d)-(e) and INT No. 20 and will not be required to provide any details of her sexual history following the alleged rape in INT No. 24.

### C. Other Disputed Discovery Requests

Averett also takes issue with Coleman's responses to INT Nos. 9, 25, and 26, and RFP No. 10. INT No. 9 requests the names and contact information for friends that Coleman discussed the

11

alleged rape with, including the precise wording of her allegations, the medium used to communicate, and her friends' reactions, advice, and any assistance or comfort they offered. (DN 94-1, at p. 9). Coleman objected that this request was overbroad because she cannot remember the exact words, location, and reaction of the discussions she had with many individuals following her assault. (DN 98-2, at p. 5). Notwithstanding her objection, Coleman provided a list of fifteen individuals she spoke in depth with about her assault. (*Id.* at p. 6).

Averett now claims it is "beyond cavil" that he is entitled to the requested information under Rule 26. (DN 94, at pp. 4-5). He explains that he is permitted, under Rule 26, to discover the names of individuals with knowledge of the events in the case, along with their contact information and the substance of the matters on which they can testify. (*Id.*). While Averett does not address Coleman's objection to the overbreadth of this request, the Court agrees that this information is relevant and discoverable. The Court, however, also recognizes that it may be difficult for Coleman to remember the specific details regarding conversations she had with each of the fifteen identified individuals. Coleman, accordingly, must supplement her response to INT No. 9 by providing contact information for the fifteen individuals and, to the best of her memory, the details of those conversations.

Averett identified INT Nos. 25 and 26 at the beginning of his Motion to Compel when listing all discovery requests to which he believes Coleman should be compelled to respond. (*See* DN 94, at p. 1). But Averett's Motion includes no support as to why the discovery requested in INT Nos. 25 and 26 is relevant and proportional to the needs of the case or why Coleman's asserted objections are invalid. Without any developed argument as to these requests, the Court will not compel Coleman to supplement her responses to INT Nos. 25 and 26.

Finally, RFP No. 14 asks Coleman to produce all social media history data for all of her current social media accounts as well as all of her social media accounts that have been deleted. (DN 94-1, at p. 19). Coleman initially objected to this request as overly broad. (*Id.* at p. 20).[5] Averett claims that Rule 26 undoubtedly permits discovery of social media posts. He emphasizes again that this information "goes to the heart of the issues involved in the case" because social media "sparked the precipitating event" that led Coleman to the sexual encounter with Averett. (*Id.* at pp. 7-8). Coleman did not address FRP No. 14 in responding to Averett's Motion to Compel.

The Court agrees with Averett that social media posts that Coleman made about Averett are discoverable and relevant here, especially to both Averett's claim of defamation and Coleman's counterclaim of invasion of privacy. Coleman's undeveloped objection that the request is overbroad is not appropriate. Not only are boilerplate objections not permitted under the Federal Rules, this District has commented that their usage is "nothing less than 'a waste of effort and the resources of both the parties and the court.'" *Burell v. Duhon*, No. 5:18-CV-00141-TBR-LLK, 2019 WL 5260481, at *4 (W.D. Ky. Oct. 17, 2019) (quoting *Wesley Corp. v. Zoom T.V. Products, LLC*, No. 17-10021, 2018 WL 372700, at *4 (E.D. Mich. Jan. 11, 2018) (internal citation omitted)). Because Coleman does not offer any appropriate objection, her objection that the request is broad is deemed waived, and she will be required to produce documents responsive to RFP No. 14.

### D. Averett's Request for Attorney's Fees

Averett makes a cursory request for a reasonable attorney fee for bringing the instant motion. Federal Rule of Civil Procedure 37 provides that when a motion to compel is granted, the court must require the party whose conduct necessitated the motion, the attorney advising that conduct, or both, "to pay the movant's reasonable expenses incurred in making the motion,

---

[5] Coleman did not include her response to RFP No. 14 in the excerpts of her supplemental responses attached to her brief. (*See* DN 98-2, at p. 7).

including attorney's fees." Fed. R. Civ. P. 37 (a)(5)(A). The Rule excepts payment of such expenses from this mandatory provision if "the opposing party's nondisclosure, response, or objection was substantially justified" or "other circumstances make an award of expenses unjust." *Id.* (a)(5)(A)(ii)-(iii). When a motion to compel is granted in part and denied in part, the Court may, after giving the parties an opportunity to be heard, apportion the reasonable expenses for the motion. *Id.* (a)(5)(C).

Here, an award of fees to Averett's counsel is neither just nor appropriate. While Averett's Motion is successful as to certain discovery requests, Averett could have avoided certain arguments altogether by reviewing Coleman's supplemental discovery responses. And the Court finds most of Coleman's objections and explanations were substantially justified. Averett's request for attorney's fees is, therefore, denied.

Order

**IT IS THEREFORE ORDERED** that Averett's Motion to Compel (DN 94) is **GRANTED IN PART and DENIED IN PART** to the extent identified above.

**IT IS FURTHER ORDERED** that Coleman's Motion for Protective Order (DN 98) is **GRANTED IN PART** to the extent identified above.

Regina S. Edwards, Magistrate Judge
United States District Court

July 22, 2021

Copies: Counsel of Record