UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**KEMARI AVERETT**                                                                                          **PLAINTIFF**

v.                                                                                                 No. 3:19-cv-116-BJB

**SHIRLEY ANN HARDY,**                                                                                **DEFENDANT**
*STUDENT CONDUCT OFFICER*

\*\*\*\*\*

## MEMORANDUM OPINION & ORDER

Following a disciplinary hearing concerning a rape allegation, the University of Louisville expelled a former football player named Kemari Averett. Averett then sued the University and a number of its leaders and employees for, among other things, violating his due-process rights. Shirley Hardy, the University's Student Conduct Officer, is the sole remaining defendant. Hardy moved for summary judgment on the claim that she—as a facilitator of the campus disciplinary hearing—failed to provide Averett with a fundamentally fair disciplinary hearing. A former co-defendant and current counterclaimant, Destinee Coleman, also moved to strike portions of Averett's response to the summary-judgment motion as scandalous, unsupported, and irrelevant.

During a telephonic hearing, the Court granted both motions orally and indicated a written opinion would follow. But before the Court issued its opinion, Averett moved for reconsideration of the order to strike. This opinion addresses those three motions, plus two *Daubert* motions filed by Hardy. It aims to explain more fully the Court's decisions made during the hearing and address the new motions and arguments raised since.

Related to the motion to strike is one issue that runs throughout the submissions in this case: many of Averett's contentions, already difficult to discern, are further obscured by unsupported assertions and rhetoric of the sort that led the Court to grant the motion to strike. The allegations at issue—concerning sexual assault and due process—are matters of the highest order; the Court endeavors to treat them with the respect they warrant, even when some filings do not necessarily aid that effort.

### A.   Procedural Background

The judge previously assigned to this case summarized the dispute this way:

1

> Plaintiff Kemari Averett was accused of rape and sexual assault by another student attending the University of Louisville. Subsequently, a hearing panel found that Averett had violated the university's code of student conduct and Defendant University of Louisville (U of L) expelled him. Averett filed suit against the university, numerous administrators, the detective who investigated the alleged rape (collectively the "U of L Defendants"), and Defendant/Counter-Claimant Destinee Coleman, asserting violations of his constitutional right to due process, violations of Title IX, defamation, and intentional infliction of emotional distress.

Motion to Dismiss Op. (DN 55) at 1, 2020 WL 1033543, at *1 (W.D. Ky. Mar. 3, 2020). After Averett sought to amend his complaint a third and fourth time, all the defendants except Coleman asked this Court to dismiss the case. Judge Hale granted that motion in large part, denied the motions for leave to amend, and dismissed all claims against the University defendants with the exception of a § 1983 procedural due-process claim against Hardy in her individual capacity. *See* Motion to Dismiss Op. at 16. The opinion recognized three theories in Averett's allegations that, if proven, might plausibly amount to a constitutional violation:

1. Averett lacked an opportunity to meaningfully prepare for the hearing because "Hardy—an agent of the university—intentionally failed to provide him with accessible critical evidence in violation of its own policies." *Id.* at 13 (citing *Doe v. Miami Univ.*, 882 F.3d 579, 603 (6th Cir. 2018)).

2. Averett lacked an opportunity to be heard at the hearing based on his "inability to access exculpatory evidence until the day of the hearing," which allegedly "impaired his ability to effectively cross-examine witnesses." *Id.* (citing *Doe v. Baum*, 903 F.3d 575, 582 (6th Cir. 2018)).

3. "Hardy was actually biased" due to "[h]er role as both investigator and presiding hearing officer," which could "contribut[e] to a violation of due process if her 'involvement in an incident created a bias such as to preclude h[er] affording the student an impartial hearing.'" *Id.* at 14 (quoting *Brewer ex rel. Dreyfus v. Austin Indep. Sch. Dist. No. 2*, 826 F.2d 260, 264 (5th Cir. 1985)).

These theories are rooted in the due-process protections afforded "students," who have a "substantial interest at stake when it comes to school disciplinary hearings for sexual misconduct." *Baum*, 903 F.3d at 582. State universities must afford due process to students threatened with significant discipline, including suspension, because that punishment "clearly implicates a protected property

interest" and "allegations of sexual assault … implicat[e] a protected liberty interest." *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017) (quotation marks omitted).

Following the motion-to-dismiss decision, the Chief Judge reassigned this case. DN 76. Averett then submitted to the new (and still presiding) judge a fifth request to amend the complaint. DN 117. But the Court denied his request, DN 156, and after discovery concluded Hardy moved for summary judgment, DN 128. Her motion contended that the record evidence supports only one result: Averett received notice and an opportunity to be heard, while Hardy wasn't (and indeed couldn't have been) a biased decisionmaker given that she "did not sit on the Code of Student Conduct hearing panel." Motion for Summary Judgment at 23.

During the briefing on that motion, defendant/counterclaimant Destinee Coleman objected to several "references to Coleman" in Averett's summary-judgment response brief. *See* DNs 173, 178. Consistent with Coleman's request, the Court construed Coleman's filing as a motion to strike portions of Averett's response.

Hardy (joined by Coleman) also moved to exclude the testimony of two proposed expert witnesses on the grounds that their testimony was unreliable and irrelevant under *Daubert*. DNs 126–27, 129–30.

## B. The Factual Record

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," then Rule 56(e)(2) authorizes the Court to "consider the fact undisputed" on summary judgment. Averett's opposition to summary judgment didn't cite his own deposition or affidavit, the disciplinary-hearing transcript, or any other admissible factual information that would contradict the record material Hardy cites regarding any significant question of fact; it cited only Hardy's deposition and his own statement from the disciplinary hearing. So under Rule 56, the summary-judgment record is largely undisputed.

### 1. The Underlying Incidents

The disciplinary hearing at issue, as well as the underlying encounter between Averett and Coleman, happened in the fall of 2018. On August 14 around 4:00 a.m., Coleman arrived at Averett's room in an off-campus apartment. They had sex but disagree over whether it was consensual. Nearly two months later, on October 8, Coleman reported the incident, which she characterized as an assault, to Hardy. That afternoon, Hardy left a voice message for Averett. *See* Notes from Kemari Averett's Maxient file (DN 128-9) at 1. Days later, "athletic staff instructed [Averett] to report to the Dean's office," where he met with Hardy. DN 173-5 at 22; *see also* Maxient Notes (DN 128-9) at 1. Hardy told him about Coleman's accusation. Motion for Summary Judgment at 2 (citing Exhibit 8 at 2). On October 25, Hardy informed

Averett that the Department of Students "was moving forward with the conduct hearing for the Coleman case." *Id.*[1]

Hardy is the Student Conduct Officer at the University of Louisville. *Id.* at 2 (citing Exhibit 4). Her job description says she must:

> Meet with students who have allegedly violated the student code of conduct to determine their level of involvement. Resolve cases, assign sanctions, update case files and track sanctions for completion by effectively and efficiently utilizing Maxient. Input University of Louisville Police Department reports as needed.

Exhibit 5; Opp. at Exhibit 9 (Student Conduct Officer Job Factors). Hardy also serves as a Title IX investigator. Motion for Summary Judgment at 2 (citing Exhibit 5). This requires that she:

> Conduct prompt, equitable and impartial administrative investigations into assigned student complaints of sexual misconduct, sexual harassment, gender-related violence including stalking and intimate partner violence, discrimination and harassment.

Exhibit 5; Opp. at Exhibit 9.

On October 15, Averett was arrested for an unrelated incident. As a result, the University suspended Averett and barred him from campus. Motion for Summary Judgment at 3 (citing Exhibit 10); Opp. at 13.

### 2. The Hearing Process

On November 2, Hardy emailed Averett a letter explaining that he had been "charged with violating" sections of "the Code of Student Conduct on August 14, 2018." Motion for Summary Judgment at 3 (citing Exhibit 11); Opp. at Exhibit 3. Averett's brief asserts that he "did not receive that letter … until several days after it was post-marked," Opp. at 13, but cites no support in the record. That letter provided him with several details about his upcoming student-conduct hearing: its time, date, and location; a link to the Code of Student Conduct, which addressed the hearing process; and instructions for reporting beforehand to the University Police Department, since he was "currently interim suspended and Persona Non Grata (PNG) from campus." Exhibit 11 (November 2, 2018 Letter from Hardy to Averett).

---

[1] Unless otherwise noted, the Exhibits this opinion refers to are those attached to Hardy's motion for summary judgment, found at DN 128.

The Code of Student Conduct explained that the standard of proof for incidents of non-academic misconduct is "a preponderance of information … based on information contained in the hearing record as provided by the complainant and the accused." Exhibit 6 (Code of Student Conduct §§ 8, 11.3). The accuser and accused would "not have the right to directly question each other unless both parties agree." *Id.* at § 11.3. But students would have the opportunity to (among other things):

> b. Present information by witness or by written statement from a witness sent to the Dean of Students Office staff. It is requested that witness statements be submitted two (2) days prior to the hearing. The witness statement will be reviewed by the hearing officer to verify that the statement was written by the witness. The hearing officer will review witness statements for incident information. The hearing officer will determine whether the statement(s) is appropriate for inclusion in the hearing….
>
> d. Question their own witness(es).
>
> e. Question the other party's witness(es) either through the hearing officer or directly as deemed appropriate by the hearing officer.

*Id.*

The hearing was scheduled for November 12. On November 6 at 10:18 a.m., Hardy sent Averett a packet containing the evidence the University possessed at the time. *See* Exhibit 8 at 4. Averett acknowledges he received a large "prehearing packet of documents via University e-mail" that day. Opp. at 6. Hardy held that prehearing conference with Averett by phone. *See* Exhibit 8 at 4.

Hardy's notes—unrebutted by any record evidence from Averett—indicate that during the next two days Coleman identified the names of students and hospital employees whose testimony she planned to present at the hearing. *See* Exhibit 3 (Notes from Destinee Coleman's Maxient File) at 1–2; Exhibit 13 (E-Mail Exchange Between Shirley Hardy and Destinee Coleman). Hardy invited each witness to participate in Averett's disciplinary hearing. Exhibit 12 (Hardy's 11-7-18 E-Mails to Coleman's Witnesses).

On November 9, Hardy sent Coleman an email informing her that that any additional evidence, including any witness statements, would first "need to be reviewed by [the] Title IX Coordinator before the conduct hearing." Exhibit 13. Coleman replied she and her lawyer "decided that it would be in [her] best interest to send it in first thing Monday [*i.e.*, the day of the hearing]." *Id.* The night before the hearing Coleman's counsel emailed Hardy additional evidence that Coleman planned to present at the disciplinary hearing. *See* Exhibit 14.

5

The next morning, Averett submitted a statement to Hardy, who told Averett to edit the statement to exclude material related to prior sexual encounters. As she described at her deposition (without rebuttal in the record), she was merely conveying the relevancy determination made by the school's former Title IX coordinator, Brian Bigelow. *See* Hardy Deposition (Exhibit 4) at 120:06–20.

Later that day, Hardy provided that additional evidence to Averett. *See* Exhibit 15 (11-12-18 E-Mail from Hardy to Averett); Opp. at 11 (citing Hardy Dep. at 78:10–78:13)). After Averett's lawyer asked for more time to review the evidence with his client, Hardy gave him at least twenty additional minutes to do so. Hardy Dep. at 84:22–85:19; Opp. at 7.

The University utilizes a "student conduct hearing board" for all conduct hearings that could result in suspension or expulsion. Code of Student Conduct § 11.3. The hearing board "hear[s] information" and "make[s] recommendations regarding findings and sanctions" to the Assistant Dean of Students. *Id.* Hardy did not sit on the panel, which included a student, staff member, and professor. *Id.*; Exhibit 19 (Facilitator Script) at 1. Hardy instead facilitated the Code of Student Conduct hearing. During the hearing, Averett questioned Coleman and her witnesses. *See, e.g.*, Exhibit 20 (Student Conduct Hearing Transcript) at 15:8–23:4 (Averett questioning Coleman).

On November 15, the panel issued its findings of fact and recommendations. Exhibit 22. The panel recommended to the Dean of Students that "Averett be found responsible for violating" several sections of the Code of Student Conduct. *Id.* "[B]ased on a preponderance of information standard," the report concluded, "there was sufficient information presented by Ms. Coleman to indicate that Mr. Averett was responsible for this charge of nonconsensual sexual intercourse on August 14, 2018." *Id.* Angela B. Taylor, the Assistant Dean of Students, was responsible under the Code for reviewing the recommendation and issuing a written decision within 10 days. Code of Student Conduct § 11.4. She "concur[red] with the findings and recommendations of the hearing board and [found Averett] in violation" of the Code of Student Conduct. Exhibit 23 (Letter from Angela Taylor to Kemari Averett) at 2. She suspended Averett from the University of Louisville and informed Averett of the appeals process.

He filed a timely appeal, Exhibit 24, which the Dean of Students and Vice Provost rejected, Exhibit 26. The Dean's ruling stated that he "[did] not find a sufficient reason to make any changes to the decision that was issued by Dr. Taylor." *Id.*

### C. Motion for Summary Judgment

Because Averett doesn't dispute the facts described above (at least not by citing evidence in the record), the question for the Court on summary judgment is largely a legal one. Were Hardy's actions consistent with the Due Process Clause and the precedents applying it in the context of higher education?

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). While the Court must view the evidence in the light most favorable to the non-movant, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). And as noted above, when (as here) "the nonmovant does not effectively address the movant's assertion of a fact," the Court may "consider the fact undisputed for purposes of the motion." *Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015) (quoting FED. R. CIV. P. 56(e)(2)).

As Judge Hale described the relevant due-process precedents, "[a]n accused student is entitled to 'at least receive the following pre-expulsion: (1) notice of the charges; (2) an explanation of the evidence against him; and (3) an opportunity to present his side of the story before an unbiased decisionmaker.'" MTD Op. at 11 (quoting *Doe v. Cummins*, 662 F. App'x 437, 446 (6th Cir. 2016)).

Averett's arguments in opposition to summary judgment don't fit neatly into these three categories; he largely abandons any bias argument, but adds a right-to-counsel objection. None defeat summary judgment, even affording the non-moving party the benefit of every doubt.

#### 1. Notice

Read forgivingly, Averett advances several arguments purporting to demonstrate that Hardy failed to provide him sufficient notice of the charges against him in advance of the hearing. In the Sixth Circuit, "[n]otice satisfies due process if the student had sufficient notice of the charges against him and a meaningful opportunity to prepare for the hearing." *Flaim v. Medical College of Ohio*, 418 F.3d 629, 638 (6th Cir. 2005) (quotations omitted). "In the context of expulsion from an undergraduate university," to constitute sufficient notice of the charges, the notice must be "written" and "should contain a statement of the specific charges and grounds which, if proven, would justify expulsion." *Id.* (cleaned up).

*First*, Averett argues that he never received formal written notice. He allegedly "did not hear anything" about the charges against him "until he received Hardy's letter dated November 2, 2018 informing him that a disciplinary hearing was scheduled for November 12, 2018." Opp. at 5. Averett contends he "did not actually

7

receive the letter until the day of the hearing." *Id*. He cites no record evidence—not even an affidavit—supporting this position.

Hardy, by contrast, cites evidence that she emailed Averett a formal written notice 10 days before the hearing. *See* Exhibit 11. Although Averett maintains that he did not *receive* that notice until several days after it was post-marked, Opp. at 13, he doesn't cite anything in the record that supports this position. Indeed, Averett admitted during his deposition testimony that he received the notice on November 2, consistent with Hardy's evidence. *See* Averett Deposition (DN 128-3) at 48:3–48:4. The November 2 letter informed Averett that he had "been charged with violating … sections of the University Code of Student Conduct" related to "physical harm" and "sexually abusive contact" based on conduct that occurred "on August 14, 2018." Exhibit 11. Consistent with the requirements of due process, this "written" notice "contain[ed] a statement of the specific charges and grounds which, if proven, would justify expulsion." *Flaim*, 418 F.3d at 638.

*Second*, Averett complains that Hardy didn't meet with him to discuss the evidence against him before the hearing. *See* Opp. at 17 ("The meeting never occurred, certainly not in substance ….") (internal citation omitted). Given that Averett appears to concede that he spoke to Hardy by phone on October 10, *id*. at 5, the most charitable interpretation of this argument is that this discussion of Coleman's sexual-assault allegations didn't enable him to meaningfully prepare for the upcoming evidentiary hearing. *See Cummins*, 662 F. App'x at 447. Averett cites no authority for his apparent position that due process imposes a per se requirement for a prehearing meeting. *See* Opp. at 6. Nor does he assert that Hardy refused to explain the evidence to him at or before his hearing. The brief doesn't otherwise elaborate on what if anything Averett considers insufficient about his prehearing interactions with Hardy.

In any event, the record evidence tells a different story. Hardy points to many pieces of evidence demonstrating that she and Averett spoke or met a number of times—including an in-person discussion of Coleman's allegations on October 10 (Exhibit 8 at 2), a phone call on October 25 (*id*.), an email from Hardy to Averett on November 2 with formal written notice of the charges (Exhibit 11), a call on November 5 to schedule a prehearing conference (Exhibit 8 at 3), and a prehearing conference on November 6 (*id*. at 4). The morning of the prehearing conference, Hardy also emailed Averett the evidence the school then had—as Averett acknowledges. Opp. at 6.

Hardy's contemporaneous notes from the November 6 prehearing conference, attached to her summary-judgment motion, indicated that she informed Averett that the information contained in the hearing documents "w[as] protected by FERPA and [that] he should refrain from sharing the information with anyone other than his legal counsel." Exhibit 8 at 4. Her deposition testimony, cited by Averett, indicated that she did not recall details about this particular call with Averett. But at

8

prehearing meetings like this she typically would have gone over (among other things) "any information about witnesses," "witness statements, if they were available at the time," and "a copy of the statement that was going to be presented during the hearing from the complainant." Hardy Dep. at 68:8–69:2.

Given Averett's lack of any factual rebuttal, the Court is left with a record indicating that Averett received formal written notice of his charges ten days before the hearing and attended a telephonic prehearing conference six days before the hearing. Averett's only response is that he and Hardy never met in person. *See* Opp. at 14. But he never cites any law indicating that email and phone meetings are insufficient. Precedents arising from the Sixth Circuit, in fact, refer to "written notice." *See, e.g.*, *Flaim*, 418 F.3d at 638; *Robertson v. Univ. of Akron Sch. of Law*, No. 21-3768, 2022 WL 1836922, at *4 (6th Cir. June 3, 2022). The prehearing meeting also accords with this caselaw. *See Cummins*, 662 F. App'x at 447 ("follow-up" meeting after receiving written notice of charges).

Even assuming an in-person, on-campus meeting is the norm, moreover, exceptional circumstances would've justified the electronic and remote communication here. As Averett acknowledges, Opp. at 6, the University kicked Averett off campus on October 16 for unrelated conduct. Averett's lawsuit doesn't challenge this exclusion. *See generally Goss v. Lopez*, 419 U.S. 565, 582–83 (1975) ("Students whose presence poses a continuing danger to persons … may be immediately removed from school.").[2] And he cites nothing in due-process jurisprudence requiring a school to override a safety restriction based on the need for an in-person prehearing disciplinary meeting.[3]

## 2. Right to Counsel

Averett concedes that that the Fourteenth Amendment doesn't necessarily entitle an accused student to have counsel participate in a disciplinary hearing. MSJ Hearing Tr. (DN 187) at 27:07–13; *see Flaim*, 418 F.3d at 636 ("Ordinarily, colleges and universities need not allow active representation by legal counsel or some other sort of campus advocate…."). But at the hearing he contended that Hardy didn't adequately and timely inform him that the Fourteenth Amendment entitles him to "qualified and knowledgeable" counsel to "help him prepare for his defense." *Id.* Averett maintains that he "didn't even know that he could have a lawyer, that he

---

[2] Although abundant due-process caselaw directly addresses campus disciplinary proceedings in particular, some courts nevertheless also examine such procedures in the light of *Mathews v. Eldridge*, 424 U.S. 319 (1976), and its much-discussed balancing test. *See, e.g.*, *Flaim,* 418 F.3d at 639. That is unnecessary here—both because Averett raises no balancing arguments and because the arguments he does make are fairly addressed by more on-point Sixth Circuit precedent.

[3] The University allowed Averett to attend his actual disciplinary hearing on campus after he checked in with campus police.

even needed a lawyer." *Id.* at 19:07–9; *see also id.* at 19:10–13 (assistance of a representative is "hollow ... if you don't understand that this representative is there to help you or can or has the ability to help you defend yourself").

This argument fails for several reasons.

*First*, Averett's counsel assisted him throughout the University's disciplinary hearing process. At points his briefing acknowledges that he knew this: "Hardy informed Averett the evening before the hearing that he had the right to have a representative present to advise him during the hearing but that the representative could not cross-examine any witnesses." Opp. at 17. Averett does not allege that anyone at the school denied him the ability to consult with a lawyer, which he did on numerous occasions before the hearing. *See e.g.*, Exhibit 8 at 2, 4. Indeed, during the October 25 conversation with Hardy, Averett said he would be meeting with his attorney (the same lawyer representing him in this case and at the disciplinary hearing) later that day. *Id.* at 2. This is consistent with the Code of Student Conduct, which provides "[t]he accused student" with "the opportunity to ... [b]ring one advisor to the hearing." § 11.3(c). That "advisor may confer and give advice to their advisee in a quiet, confidential and non-disruptive manner." *Id.* Averett's lawyer attended the hearing as his adviser and assisted Averett throughout the proceedings. *See, e.g.*, Exhibit 20 (Student Conduct Hearing Transcript) at 17:07–12, 19:08–21.

*Second*, Averett's brief and oral argument fail to explain how the purported lack of representation prejudiced his case. And "a party must show that it was prejudiced in order to succeed on a due process claim." *Karst Robbins Coal Co. v. Director, Office of Workers' Compensation Programs*, 969 F.3d 316, 329 (6th Cir. 2020). Averett tries to bootstrap his notice argument onto this right-to-counsel contention by asserting that "if he had a lawyer, and knew … he could have a lawyer ... then ... his lawyer would have objected to the hearing." MSJ Hearing Tr. at 26:3–5. But Averett never identifies why such an objection would've been well taken. The inability to lodge a futile objection surely does not amount to deprivation of due process.

*Third*, he failed to identify any evidence that this hearing was sufficiently complex to trigger a constitutional entitlement to counsel throughout the disciplinary process. Counsel in such proceedings is "[o]rdinarily" not required by due process. *Flaim*, 418 F.3d at 636. The Sixth Circuit has recognized, however, that in some circumstances "a student may have a constitutional right to counsel"—only if "the hearing is unusually complex or when the university itself utilizes an attorney." *Cummins*, 662 F. App'x 437 at 448–49. Here, however, the University did not use a lawyer to present a case against Averett. And Coleman, like Averett, was entitled only to an advisor who could not actively participate during the hearing. Plus Averett hasn't alleged or shown the hearing was particularly complex. Averett's complaint "really boils down to the assertion that he was denied the opportunity to present his case as *effectively* as he would have wished [and] he could not reasonably claim that

10

he was denied the *opportunity* to present his case at all due to the lack of legal counsel." *Flaim*, 418 F.3d at 640.

### 3. Access to Evidence and Opportunity to Defend Against It

On the morning of the hearing, Hardy emailed Averett "the information that Ms. Destinee Coleman [would] be presenting during the conduct hearing" and the names of "four witnesses" Coleman invited to attend. Exhibit 15; *see also* Coleman's Packet of Information (DN 173-7) at 1–20. Averett maintains (without citing record evidence) that "he did not receive it." Opp. at 6. Then, at the hearing, Hardy gave Averett and his lawyer the full packet of evidence that would be presented to the hearing panel. Hardy Dep. at 78:10–20; Opp. at 17 (Hardy "plopped down" the hearing packet). This packet included information Hardy had already shared and reviewed with Averett (sent on November 6) as well as Coleman's subsequently arriving evidence (received on November 11). The lateness of this information, Averett contends, deprived him of a meaningful opportunity to prepare for the hearing. Opp. at 17. How, Averett asks, was he "supposed to prepare for the hearing if he did not have the packet?" *Id.* at 11.

Averett doesn't say the University (not to mention Hardy) violated his due-process rights by assigning the accuser (rather than the University) the responsibility for assembling evidence. *See* Code of Student Conduct § 11.3(b). (Indeed, he similarly didn't submit his statement until the morning of the hearing.) And Averett doesn't contend Hardy withheld information already in her or the University's possession.

The record indicates she did not. On November 6, Hardy sent Averett the information the school had already collected, including the witness statements of two University hospital employees expected to testify for Coleman. Averett Prehearing Documentation (DN 173-3) at 3. Three days later—which was three days before the hearing—Hardy told Coleman by email that any additional evidence, including witness statements, would "need to be reviewed by [the] Title IX Coordinator before the conduct hearing." *See* Exhibit 13. Coleman replied that she and her lawyer "decided that it would be in [her] best interest to send it in first thing Monday," that is, the day of the hearing. *Id.*

Hardy ultimately received Coleman's additional evidence late the night before the hearing. *See* Exhibit 14. It included statements from Coleman's witnesses, messages between Coleman and friends around August 14, medical and mental-health records, a *Courier-Journal* interview with Averett addressing the rape allegations, and Averett's football schedule from August 14. *See* Ex. 15; Coleman Hearing Information (DN 176-1) (sealed). This was evidence that Hardy didn't compile, the school didn't rely on to charge Averett, and remained out of the school's possession until the night before.

Averett doesn't point to anything that the school obtained but didn't promptly share with him. *Cf. Miami Univ.*, 882 F.3d at 603 (university failed to provide

11

accused student with charging report compiled by school officials containing the evidence against him); *J. Endres v. Northeast Ohio Medical Univ.*, 938 F.3d 281, 301 (6th Cir. 2019) (failure to disclose report authored by professor and presented during misconduct hearing). Averett does not claim an entitlement to prehearing discovery or disclosure of witness testimony.[4] "Universities," after all, "do not have subpoena power." *Univ. of Cincinnati*, 872 F.3d at 405. How Hardy was supposed to supply information she didn't yet possess is not explained in Averett's brief or argument.

Averett briefly asserts that Hardy violated the Code of Conduct by depriving him of access to the evidence against him: "Hardy did not provide him with the material against him until a few minutes before the hearing began, in violation of the U of L Code of Student Conduct. The Code required that all "[a]vailable information be reviewed with the student prior to the hearing. The meeting never occurred, certainly not in substance." Opp. at 17 (internal citation omitted). But the Code of Student Conduct (which of course does not necessarily match—much less establish—the requirements of due process) requests, rather than requires, witness statements two days in advance. *See* § 11.3(b).

He also complains about the scope of the evidence gathered by Hardy, who (he contends) "only reached out to witnesses who could corroborate Coleman's version of events." Opp. at 15. This is merely an allegation, however; the opposition cites the Judge Hale's motion-to-dismiss opinion, not any record evidence. Even if supported with admissible proof, moreover, that would not necessarily establish a due-process violation. As Hardy's record citations make clear, Averett could have brought to the hearing his own witnesses who could corroborate his version of events or challenge Coleman's credibility. *See* Code of Student Conduct § 11.3(b).

Next Averett objects that Hardy "rejected" his original statement submitted in advance of the hearing "and forced him to condense it … to less than a half page." Opp. at 6. And she did so despite permitting Coleman to include in the hearing record "highly prejudicial newspaper articles" regarding Averett's separate alleged criminal incident. *Id.* These prehearing statements and additional documents, he notes, became part of the hearing record. This decision, according to Averett, effectively excluded information he hoped to address regarding his prior romantic relationship and physical encounters with Coleman, even though Coleman's evidence included unrelated criminal allegations.

But according to Hardy, it was "[Brian] Bigelow, then the Title IX Coordinator for the University," who "determined that the information about prior sexual

---

[4] Relying on Hardy's deposition testimony, Plaintiff's counsel presumes Hardy "overlooked" "discovery requests" for earlier access to the hearing evidence. Opp. at 11; *see* Hardy Dep. at 77:21–78:07("[I]f it wasn't provided, then [she] must have ... overlooked it."). The record citations on summary judgment, however, contain no evidence of any such discovery request.

12

encounters was not relevant to the issue of whether the sexual encounter on August 14, 2018 was consensual." Hardy Dep. at 120:06–20. The Title IX coordinator reviewed the statement "for relevancy" and deemed this material immaterial to the question of consensual sexual relations on August 14. *Id*. "Once Mr. Bigelow reviewed it … he circled the information that needed to be redacted" and then Hardy "contacted … Averett" to redact those portions. *Id*.

The same goes for the newspaper article. At her deposition—included as an exhibit to Averett's opposition papers—Hardy stated that it was "Coleman," not her, who "submitted" the article for inclusion in the hearing packet. *See* Hardy Dep. at 105:16–17. And Hardy stated that "Mr. Bigelow," not her, "ma[de] the decision" to include the article. *Id*. at 106:15–19. Once again, Averett does not contest this version of events by citing record evidence a jury could reasonably rely on to reject Hardy's version of events. Bigelow, in any event, has already been dismissed as a defendant in this case. And Averett doesn't challenge the constitutionality of the Code of Conduct provisions that Bigelow allegedly implemented.

\* \* \*

Averett's arguments would fail for a separate reason as well: he cannot identify any prejudice associated with the nature or timing of his access to Coleman's evidence. *See Karst Robbins Coal*, 969 F.3d at 329 (requiring prejudice); *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1242 (10th Cir. 2001) ("In order to establish a denial of due process, a student must show substantial prejudice from the allegedly inadequate procedure.").

Following the hearing, appeal, complaint, and discovery, Averett remains unable to identify anything that would've happened differently if he had access to more information at an earlier time. Nor, despite being pressed at argument, has he described any particular surprise or prejudice that arose from Coleman's submission and affected the panel's decision. *See* MSJ Hearing Tr. at 21:02–06; 25:22–26:12. Even assuming the rules and rulings discussed above were unconstitutional and attributable to Hardy, Averett doesn't point to anything in the record indicating they prejudiced his evidentiary presentation. Averett did in fact cross-examine Coleman on their prior relationship, contrary to his argument that evidentiary limitations prevented that. *See* Exhibit 20 at 22:11–22. So despite the shortening of his prehearing submission, the disciplinary panel heard about the previous relationship between Averett and Coleman, who admitted it in response to Averett's questions.

Averett concedes, moreover, that he was able to review the material with his lawyer before the hearing (even if not as far in advance as he would've preferred) and could cross-examine witnesses himself at the hearing. *See id*. at 19:18–22; 25:22–26:12. Averett received an opportunity to question Coleman and each of her witnesses during the hearing. And nothing in the record indicates that Coleman or any of those witnesses refused to answer Averett's questions. He had an opportunity

13

to "respond, explain, and defend" his conduct against Coleman's charges, and the adequacy of that opportunity does not depend on "whether the hearing mirrored a criminal trial." *Cummins*, 662 F. App'x. at 446 (citing *Flaim*, 418 F.3d at 635).

### 4. Bias

Averett's response—briefly and without supporting citations—contends that Hardy was biased. Opp. at 1, 15, 18. At the motion-to-dismiss stage, Judge Hale allowed this claim to proceed, partly on the basis of Averett's allegation that Hardy "sat on the panel that recommended Averett's expulsion." Motion to Dismiss Op. at 14 ("Her role as both investigator and presiding hearing officer contributed to a violation of due process if her involvement in an incident created a bias such as to preclude h[er] affording the student an impartial hearing.") (quotation marks omitted).

The summary-judgment record shows she did not. *See, e.g.*, Exhibits 19–20. Averett doesn't dispute this, but complains about other aspects of her involvement in his disciplinary process. Even assuming Hardy is properly considered part of the "school-disciplinary committe[e]" based on her role as a facilitator of the hearing, however, such committees "are entitled to a presumption of impartiality, absent a showing of actual bias." *Cummins*, 662 F. App'x at 449. So "any alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based in speculation or inference." *Id.* at 450 (cleaned up).

Speculation is all Averett relies on at summary judgment, however. His opposition brief didn't point to any record evidence raising a plausible suggestion of bias, despite Hardy's motion putting him on notice of this argument. *See* Motion for Summary Judgment at 21–23. Nor did counsel point to any evidence at the oral argument that would give rise to a jury question on the issue of bias.

As to the investigation, Averett argues that Hardy, whom he describes as the "lead investigator," failed to make "an attempt to interview Averett's roommate and his neighbor, both fellow football players who were home at the time of the sexual encounter." Opp. at 8–9. "Hardy ... made no attempt to contact Averett's roommate and his neighbor as he requested her to do." *Id.* at 5. Rather, according to the opposition brief, Hardy "collude[ed] and corroborat[ed] with Coleman [in] the packaging of the disgustingly biased evidence packet that she shamelessly presented to the hearing panel that she had trained and over whom she obviously had great influence." Opp. at 1. These comments on Hardy's role, however, are counsel's own characterizations rather than evidence. Averett hasn't pointed to any record material indicating Hardy was obliged to interview these purported witnesses.

To the contrary, Hardy's motion identifies evidence that *Averett* bore this responsibility: "The accused and complainant are able to submit witness names and contact information for the incident." Code of Student Conduct § 9(t). Those

14

witnesses "may be contacted by the Dean of Students Office for their statement." *Id.* Yet at her deposition, Hardy explained that she "didn't investigate" Averett's witnesses because Averett "did not provide [Hardy] with their contact information and their names." Hardy Dep. at 151:12–14. Averett "said he was going to check to see if his roommate would like to participate," but nothing indicates he followed through. *Id.* at 151:14–17. Averett does not contest this version of events—at least not with facts. No evidence supports his allegation that Hardy selectively identified and ignored witnesses.[5]

As to the hearing, Averett does not identify any witness he was barred from calling at the hearing.[6] The school unquestionably permits students to "[p]resent information by witness" at the hearing. Code of Student Conduct § 11.3(b). But "[i]t is the responsibility of the accused student and the complainant to notify their witness(es) of the date, time, and location of the hearing." *Id.* Averett doesn't challenge this policy. And he admitted that, unlike Coleman, he didn't talk with anybody about serving a witness on his behalf for the hearing—not even those two roommates. Averett Dep. at 57:13–15. Nor did Averett remember ever telling Hardy that he had witnesses who he wanted to attend the hearing. *Id.* at 58:19–21.

That Hardy both served as a Title IX investigator and facilitated the disciplinary hearing, *see* Opp. at 3, does not necessarily imply bias, *see Miami Univ.*, 882 F.3d at 601 ("[A]n individual's dual roles do not per se disqualify him or her from being an impartial arbiter."). This theory demands "a showing of actual bias," which Averett hasn't supported in the record. *See McMillan v. Hunt*, 968 F.2d 1215 (6th Cir. 1992) (table opinion). Averett's further speculation about the hearing panelists' backgrounds ("whether they have been victims themselves of conduct similar to that which students are accused of having committed") is legally irrelevant to the question

---

[5] Averett also argues that that Judge Hale "not[ed]" that "Hardy, acting as U of L's lead investigator, only reached out to witnesses who could corroborate Coleman's version of events." Opp. at 15. That misconstrues the motion-to-dismiss opinion, which merely described Averett's allegations and made no factual findings. *See* MTD Op. at 3 ("*Averett alleges* … that Hardy, acting as U of L's lead investigator, only reached out to witnesses who could corroborate Coleman's version of events."). The record shows that Coleman rather than Hardy identified the names of the student and hospital witnesses who would testify in support of Coleman's accusation. *See, e.g.*, Exhibit 3; Exhibit 13. After Hardy learned their names on November 7 and 8, she sent an email to each witness inviting them to participate. *See* Exhibit 12.

[6] That Hardy purportedly "made no effort to persuade Detective Brown to testify about the lurid images that Coleman sent him periodically," Opp. 11, finds no support in the record and contradicts the University's policy (discussed above) of allowing complainants to introduce evidence and call witnesses. Nothing indicates Hardy prevented Averett from asking Detective Brown to appear as a witness—or that anything would've changed if Brown had testified.

of Hardy's neutrality and cannot possibly defeat summary judgment on this issue. *See* Opp. at 3–4.

Finally, Averett levies a generalized claim of bias rooted in Hardy's "training," "credentials," and "qualifications" to make the "rulings on evidentiary matters." Opp. at 3. These, he maintains, are "unknown," *id.*, despite elsewhere mentioning "Hardy's extensive training as a title IX officer and the Student Conduct Officer," *id.* at 9. The candidly "unknown" nature of the facts all but settles that Averett lacks any record evidence that could reasonably overcome the presumption of regularity. *See Cummins*, 662 F. App'x at 449. And nothing identified in the record independently calls into question Hardy's competence. "It is not sufficient for the party opposing summary judgment to present a mere scintilla of evidence; the evidence must be such that a reasonable jury could find in [his] favor." *Staunch v. Cont'l Airlines, Inc.*, 511 F.3d 625, 628–29 (6th Cir. 2008) (quotations omitted).

### D. Motion to Reconsider Decision to Strike Scandalous Material

Coleman filed an objection (DN 174) to Averett's summary-judgment response that asked the Court to strike aspects of that brief under Federal Rule of Civil Procedure 12(f). The relevant statements included uncited accusations that Coleman was a "groupie" and far worse. *See, e.g.,* Opp. at 2 (Coleman was "by her own admission and reputation, generally [described] as a groupie, i.e., a female who fawns over and adores male athletes."). Coleman's lawyer objected to "things that are not in the record, weren't in testimony, [and] weren't in documentation," contending that such characterizations and factual allegations "should be taken out and not [included] in a public filing." MSJ Hearing Tr. at 13:03–06. Plaintiff's counsel maintained that "the material" underlying these "description[s]" of the record was produced and presented by Coleman and Hardy—making it relevant to his case. Response to Coleman's Objections (DN 179). But even if it were relevant to the Student Conduct proceeding, it didn't bear on federal due process and wasn't supported by evidence in the federal record. So the Court granted the motion during the hearing on the ground that these statements, as set out in Coleman's brief, were scandalous, irrelevant, and unsupported by the record evidence. In effect, they amounted to a lawyer's rhetoric attacking the character of a party.

Rule 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Although Coleman asks to strike portions of briefs rather than pleadings, the principles animating Rule 12(f) from "pleadings" extend to summary-judgment filings. *Cf. Reed v. City of Memphis*, 735 F. App'x 192, 197 (6th Cir. 2018) (considering motion to strike an affidavit). These "conclusory" factual characterizations from counsel, moreover, "are not evidence" and therefore are not responsive to a summary-judgment motion. *Gooden v. City of Memphis Police Dep't*, 67 F. App'x 893, 895 (6th Cir. 2003). No party has denied that judges possess some degree of authority to strike such impertinent material from the public record of judicial proceedings.

16

At the hearing, the parties appeared to agree that at least some portions of Averett's brief weren't supported in the record. *Compare* MSJ Hearing Tr. at 14:5–7 ("[T]here was no admission [in the record] of [Coleman] being a groupie") (Counsel for Coleman); *with id.* at 12:9–11 ("[O]mit the groupie. Okay. If that's not in the material that they prepared.") (Counsel for Averett). Factual descriptions inserted by counsel without support in the record plainly are inappropriate for consideration on summary judgment. *See Arendale v. Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) ("In order to survive summary judgment, Plaintiff cannot rely on conjecture or conclusory accusations.").

These unsupported characterizations of *Coleman's* personal life are immaterial to the Due Process claim at issue in *Hardy's* summary-judgment motion. Averett does not allege that Coleman, a student, acted as a University decisionmaker. *See Doe v. Wright State Univ.*, No. 3:16-cv-469, at *11 (S.D. Ohio Aug. 24, 2017). Other than to provide basic background for the hearing procedures at issue, counsel had no need to discuss Coleman at all in this brief. *See United States v. Zayed*, 225 F.3d 660 (6th Cir. 2000). And the repeated extra-record characterizations of Coleman went beyond basic background. Nor were they grounded in the record in any event—an independently sufficient reason to ignore them at the summary-judgment stage. *See Arendale*, 519 F.3d at 605.

The descriptions were also "scandalous," which as used in Rule 12(f) "generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *See Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 776 (E.D. Mich. 2014).

As the Court explained during the hearing:

> I share many of the concerns expressed in the reply from Ms. Coleman that there is a disturbing amount of commentary here that is … [even] setting aside its scandalous nature … simply not grounded in the record or relevant to the procedural due process claim. Certainly, some of it is also scandalous and inappropriate for counsel to represent as a matter of fact in response to a summary judgment motion. So given that this material that is not grounded in record citations is not appropriate to consider at summary judgment anyway, what I'm going to ask you all to do is … confer and refile a corrected opposition that eliminates material that is scandalous and not grounded in the record….

MSJ Hearing Tr. at 8:06–9:21.

Striking the material in question, the Court explained, would have no bearing on the summary-judgment question—both because it wasn't grounded in record evidence and because Coleman's personal life was irrelevant to the due-process claim. Plaintiff's counsel repeatedly argued this ruling would prejudice his client's ability to defend himself against serious charges. This conflated the merits of the underlying student-misconduct charges levied against Averett with the procedural question of due process that he himself raised in federal court. The material challenged as scandalous "goes to the underlying question that was relevant at the student conduct hearing," but that issue "is almost entirely not relevant now." *Id.* at 9:23–24. This litigation is "only dealing with the procedural questions implicated by that hearing, not the underlying factual determination" of the University panel and administration. *Id.* at 10:2–4. The ruling on the motion to strike "ha[d] no bearing on the Court's ruling on the motion for summary judgment," *id.* at 13:19–20, but responded to Coleman's understandable concerns regarding its inclusion in the public record in this case:

> Just to be totally clear, I am not trying to require a substantive difference in what was filed regarding the relevant question of procedural due process here. I'm not trying to hamstring anyone's legal arguments. This is addressed to the material that is factual but not cited in the record material, and which is pe[r]jorative or scandalous … without being relevant to the claim.…

*Id.* at 13:10–16.

So the Court ordered all three parties to confer regarding the offending passages so that Averett could then refile a substantively identical opposition brief that eliminated any characterization of Coleman that was scandalous, irrelevant, and not tied to the record. *Id.* at 11:08–24.

Averett didn't, but instead filed a short motion to reconsider the ruling on the motion to strike. Counsel for Coleman apparently tried to confer and submitted to Plaintiff's counsel a proposed redacted version of Averett's opposition brief. DN 189 ("Notice of Compliance"). But after Plaintiff's counsel apparently didn't respond, Coleman filed the redacted version, which she denominated as a "Submission of Redacted Version of Plaintiff's Response to Motion for Summary Judgment." DN 191. This version of the opposition redacted "all objectionable and unsupported factual characterizations," asking the Court to enter it into the record in place of the original brief. Coleman's version included approximately 20 targeted redactions that aligned with her original motion to strike.

Plaintiff's counsel filed a short and unresponsive response. Again misperceiving the distinction between the underlying misconduct claim and the federal due-process claim, counsel reiterated "that Coleman's Compliance with the

18

Court's order directing counsel for the parties to confer and agree on language that would be acceptable to the Court to replace certain language used by Averett in his Response … is unworkable and would drive the nail of Constitutional ignominy even deeper into the coffin of failed due process that buries the life and career of Kemari Averett…." DN 190. This has nothing to do with the reasoning behind the order to strike. As to Rule 12(f), Averett didn't specifically comment on Coleman's proposed redaction. Nor did he offer any proposed redactions of his own or refile a brief citing relevant record evidence.

So the Court is left without any submission from Averett in response to the order to confer and refile his brief. Coleman explained as much in a "notice of submission of redacted version," again attaching the proposed redacted brief. DN 191. This time Averett didn't respond. So the Court grants Coleman's motion as unopposed and orders the Clerk to seal the original opposition brief (DN 173) and treat Coleman's redacted version of the opposition brief (DN 191-1) as the version publicly available on the docket.

## E. Motion to Exclude Expert Testimony

Averett disclosed two potential damages witnesses who would offer expert opinions related to Averett's prospective earnings as a potential professional athlete. Hardy moved to exclude their testimony under *Daubert* on the grounds that each witness's testimony was unreliable and irrelevant. DNs 126, 127.

One witness is a strength trainer; the other is an assistant college coach. Neither appears to have worked for a professional football team, scouted prospects, negotiated or prepared professional football contracts, or made economic projections regarding earnings. That is not necessarily dispositive, because Rule 702 permits testimony by an expert whose qualifications are solely based on experience. *See United States v. Cunningham*, 679 F.3d 355, 378–79 (6th Cir. 2012). But even if some qualified expert witnesses "might draw a conclusion from a set of observations based on extensive and specialized experience," these two did not. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999).

Because their disclosed opinions "relie[d] solely or primarily on experience," the law required them to "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Antioch Co. Litig. Tr. v. Morgan*, 633 F. App'x 296, 300 (6th Cir. 2015) (quotation marks omitted). As noted during the hearing, much of the testimony was unsupported or irrelevant under Rule 702, though some limited testimony was likely within the witnesses' expertise and therefore admissible. So the Court granted Hardy's motions in part and denied them in part, noting that the specific limitations on their testimony could be addressed (if necessary) closer to trial. DN 180.

Now that the Court has granted judgment to Hardy on Averett's claims, however, the witness disclosures and motions to exclude no longer relate to an issue in dispute. So to the extent the Court didn't already deny the motions, the Court notes that the issue is now moot in any event.

## CONCLUSION

As noted during the hearing, the Court grants summary judgment in favor of Hardy for the reasons stated then and further explained here. Averett failed to cite record evidence that would create a genuine issue of material fact and allow a reasonable jury to conclude that Hardy violated his due-process rights.

The Court further denies Averett's motion to reconsider its previous ruling granting the motion to strike. The Clerk shall docket the redacted version of the opposition brief (DN 191-1), filed without substantive opposition, as the operative filing available in the public record. The Clerk shall seal the original brief (DN 173), which will remain part of the record in this case. The Court notes, however, that nothing about the redacted or stricken material would have any bearing on the summary-judgment decision, which reflects consideration of *all* Averett's arguments and citations.

Finally, the Court orders the parties to confer with one another and contact the magistrate judge to set a status conference regarding the remaining counterclaim and any other outstanding issues. The parties must contact the magistrate judge or otherwise file a status report within 30 days.

Benjamin Beaton, District Judge
United States District Court

March 10, 2023