*FILED ELECTRONICALLY*

IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **KEMARI AVERETT,** | ) |
| *Plaintiff,* | ) ) ) ) |
| | ) *Case No. 3:19-CV-00116-BJB-RSE* |
| v. | ) ) ) ) |
| **SHIRLEY HARDY, ET AL.** | ) ) |
| **Defendants** | ) ) |

### PLAINTIFF'S CORRECTED RESPONSE TO DEFENDANT DESTINEE COLEMAN'S MOTIONS IN LIMINE

Comes Plaintiff Kemari Averett, by counsel and states in response to Coleman's Motions In Limine as follows: First, however, counsel for Averett moves the Court to deny the Defendant's request for the Court to impose the harsh esoteric philosophical restrictions and conditions on him as explained below primarily for two reasons. First, it would ham string Plaintiff from trying his case in the manner that has been established for generations , if not from the beginning of the Republic, and in accordance with the procedures prescribed by the Federal Rules of Civil Procedure.

Second, it would lead to long delays, especially given the nature of this case.

The motion practice and preliminary and pretrial proceedings heretofore confirm this inevitability. The entire case is about whether the Defendant was raped or whether Coleman consented to sexual intercourse. Indeed, evidence will be introduced from both parties from which the jury could not only find that Coleman consented to having sex with Averett but that

she was the aggressor. Furthermore, her attorneys seem oblivious to the fact that questions will not be confined to direct examination from counsel for Everett. If the Court were to impose their restrictions, they will be bound by their own restrictions and mired in the metaphysical quagmire illustrated below. Furthermore, they seem to have forgotten that non-verbal evidence will be introduced which obviously will further prolong the trial and ensnare them in the metaphysical entanglement.

Third, if the Court were to impose counsels' opposites' restrictions on Averett's counsel, it surely will alienate the jury and cast him in a bad light which will deprive Averett from having a fair trial. The jury is going to think, and surely discuss in the jury room, the "Why" did Averett's lawyer have to constantly approach and be summoned to the Bench?" With these thoughts in mind, counsel for Averett will now address the Defendant's motions in the following order that counsel opposite presents them, to wit: That

1. Counsel and the witnesses for Averett should be "precluded from inquiring or commenting about matters prohibited by the Rape Shield Rule. Counsel for the Defendant is asking this Honorable Court to make a metaphysical leap of chasmic if not cosmic epistemological proportion and magnitude. Simply put, they are asking this Court to impose conditions on the undersigned that are intellectually unattainable. Simply put, counsel for Coleman are asking this Court to impose on Counsel for Averett a task that requires him to not merely avoid, but also hold him accountable for any inabilities of the jury to process matters that are intellectually challenging for scholars in philosophical systems that challenge even the most astute scholars.

    This is especially so in the daunting field of epistemology, a field which

alone challenges the most intellectually gifted, for example, those who study and analyze matters of the theory and knowledge of the nature, and the methods and limits of knowledge, tasks which are challenging for scholars in one of the most vast and challenging disciplines in the school of philosophy[1].

With this analysis in mind, one can understand how it is that the attorneys for Coleman inexplicably, but inexcusably ignore the following instructions and teachings in Rule 412 at (2) regarding civil cases, to wit:

In a civil case, "the court may admit evidence offered to prove a victim's sexual behavior or sexual predisposition if its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." It goes on to state as follows: "The Court may admit evidence of a victim's reputation only if the victim has placed it in controversy." Which is precisely what Coleman and Hardy did in this case.

The event leading to this lawsuit was initiated by Destinee Coleman, a student at the University of Louisville who snooped, without invitation, on snapchat conversations that Kemari Averett, a star football player at the University of Louisville, beginning in August, 2017, was having with his teammates about a bad day that he had on August 16, 2018. Destinee Coleman and Kemari had periodically engaged in casual consensual sex for several months during the school year. Although it was a casual relationship, Coleman wanted a more serious and entangled affair. She called him frequently, and complained at one time that he was no longer interested in her slow "----." She went so far as to threaten him if he dated any other girl.

---

[1] The theory of knowledge ,especially with regard to what distinguishes justified belief from opinion. Put in the most mundane terms, it is what makes sense and what does not make sense opinion.  It ihas to do with the whole theory of knowledge; indeed, that which canbe to obtuse to many.

Returning to the snapchat conversation, Coleman, claiming that she sensed suicidal ideations in Kemari's voice because she had experienced similar ideations in her own struggles with suicidal ideations. During the conversation, Kemari invited her to come over and cuddle. Without hesitation, she eagerly accepted the invitation and said that she would be there when she got off work around 4:00 a.m. and took a shower. He told her that he would leave the door unlocked and she could enter the way that she normally did. When she arrived, he was asleep and unclothed when she got in bed with him. When he woke up he asked her why did she not wake him up and they began to cuddle. It is more than significant that the first thing out of her mouth was "Do you have that white girl pregnant?" He replied that he did not and began to remove her panties. She told him that she was not horny and was dry down there. (emphasis added). He responded that he would get her ready. At that point, he wet his fingers, as was their custom, because of an issue with her vagina. They had sex and he took a shower and began to get ready for a football meeting. At that time she asked him again if he had gotten that girl pregnant. When he admitted that she was pregnant but he was not sure it was his baby she got angry and began to berate him. He angrily responded that she could get out and never come back.

Significantly, his roommate was in his room, and his neighbor, who would have been able to hear any disturbance because of the thin walls, if, as she claimed to Shirley Hardy and Detective Brown, that she violently fought him off to prevent him from having sex with her. In one police account she claimed that she was running on and around the bed,[2] in what is believed to be a KRYBIS Report, a U of L campus policeman reported that her panties were hanging on the bed post.

---

[2] The account is contained in a Kyribis Report (sp) provided by Detective Brown.

It absolutely cannot be overstated that Coleman had an extensive snapchat conversation with P.J. Blue, another fellow student whom she had sex with on an apparently frequent basis. She called him after having sex with Averett. Blue made the following telling statement during their snapchat conversation: " Of all the times when we had sex and you told me to stop, I stopped?

It must also be kept in mind that she and Hardy introduced her medical and sexual history into evidence at the disgusting Kakan chicanery-staged due process hearing. It is beyond debate, as the authorities cited herein confirm, that they opened the door to her sexual and medical history. The attorneys for Coleman have made much ado, on more than one occasion, about Judge Beaton's excluding this evidence in granting Hardy summary judgment. Inexplicably, he pronounced at the hearing on Hardy's motion for summary judgment that this evidence and any of like manner were not part of the record of this case. **(emphasis added)**

Judge Hale, Judge Beaton's predecessor, got a different message from his studied treatment of the case. It is more than significant, indeed beyond compelling that his decision included the dismissal of all known University Defendants except Shirley Hardy when this action was filed. He found that she was the official investigator, implementer of the due process hearings, and the hearing officer over the hearings when students are tried for violations of the University's Code of Student Conduct (DN 55 14**) I D # **). **(Page14).** Additionally, he found that she was the hearing officer and as such presided over the due process proceedings (Id.). The due process proceedings and all matters related to the Student Code of Conduct were run and controlled by Dean Mardis and his staff, including Assistant Dean Angela Taylor, Hardy's supervisor, and Hardy, the salutary figure in the proceedings against Averett, as Judge Hale properly held. It is significant, revealing, and certainly cannot be overstated that  Hardy's

attorneys and the University's attorneys and Coleman's attorneys never challenged or contested Judge Hale's rulings and reasoning. This includes the matters that Coleman's attorneys are requesting Judge Beaton to exclude at the trial of this case.

The Student Code of Conduct, which prescribes and sets forth the due process requirements imposed on the University, and details the rights of the students which are grounded in the Fourteenth Amendment to the United States Constitution were denied Kemari Averett by Hardy's callous, biased, and perfidious disregard for those high principles and sacred institutions which were designed, intended, and sanctioned to protect Kemari Averett and the students attending the University of Louisville. Her treatment of him and the collaboration of Detective Brown amounted to perfidy and chicanery of the worst sort.

Indeed, her callous and shameful breach of fair play is captured irrefutably by Judge Hale, relying on the veracity and validity of Averett's account of this tragic schmaltz, unveils Hardy's Kafkan machinations of the Student Code of Conduct as she desecrated the sacred institutions and principles of justice writ large by the Founding Fathers of this great nation, to wit:, citing *Doe v. Miami University,* 872 F.3d. 393(6th Cir. 2017) (citing *Flam v. Med. Coll. of Ohio,* 418 F. 3d 629, 633 ( 6thCir.2005)). Noting that due process is due students finding themselves in Averett's situation, citing firmly established authority in the Sixth Circuit, he answers the question of what process is due. The answer, he finds, lies in the ***Matthews factors*** **(1) the nature of the private interest … (2) the risk of erroneous deprivation under the current procedures used; (3) an opportunity to present his side of the story before an unbiased decision maker."** citing *Cummins,* 662 F.App'x at 446 (citing *Heyne v. Metro Nashville Pub. Sch.*, 655 /f,3d 556-565-66 (6th Cir. 2011) (citing Goss, 419 U.S. at 581(Id. at 11-12).

Judge Hale emphasizes Averett's pointing out that he was deprived of sufficient notice (D.N.5, Page ID # 114), pointing out that it is one of the most fundamental acts of due process," quoting, *Flaim,* 418 F.3d at 638, which holds that a student has received adequate notice under due process if he had sufficient notice of the charges and a meaningful opportunity to prepare for the hearing," citing *Jaksa v. Regents of University of Mich,*597 F.Supp. 1245 (E.D. Mich, 1984), aff'd 787 F.2[nd] 590 (6th. Cir., March 20, 1986) (Table). In *Doe v. Miami University,* a female student, Jane, accused the plaintiff, John, of sexual misconduct. 882, F.3d 579 (2018). The university found John had violated the student code of conduct. Id. at 587. He was suspended and later sued the university . The Sixth Circuit found that because the decision against John was at least partially supported by evidence the university did not provide him, he had alleged" Id. at 603s. This, combined with John's allegation that he had faced a biased adjudicator, was enough for the Sixtth Circuit to hold that John had sufficiently pleaded a procedural due process claim and reversed the district court's dismissal of that claim Id. at 604.

As Averett alleged, and Judge Hale accepted, Hardy did not provide him with the material against him until the day of the hearing, in violation of the U of L Code of Student Conduct. (D.N. 5 Page ID #114). The meeting never took place. The Code required that all "available information be reviewed with the student prior to the hearing D.N. 1-2, PageI.D. #27. That meeting never occurred (OP. at 13), certainly not in substance.

Hardy informed Averett the evening before the hearing that he had the right to have a representative present to advise him during the hearing but the representative could not cross-examine any witnesses. Late that evening Averett contacted his attorney who represented him on the state charges involving his white girlfriend and asked if he could represent him at the hearing. When they arrived, the attorney asked Hardy to explain the process to him and she

refused. She plopped down on a table the hearing packet was going to be presented to the hearing panel and allowed them ten to fifteen minutes to review the packet.

The day before the hearing Averett submitted a two-plus page rendition of the incident (attached hereto as Exhibit Hardy forced Avett to condense to a quarter of a page the document that Averett had prepared explaining his version of the story to the hearing panel. Page ID #36 Document 1-3, Page ID#36 (D.N.#1,Page ID #36 ,. However, Hardy forced him to reduce it to a quarter of a page (attached hereto as Exhibit 4)

When the hearing was convened, Averett's attorney requested that Hardy explain who the panelists were and how the hearing would be conducted. She refused to do so. When counsel insisted that his client had the right to know, Hardy turned off the recording and threatened to have the University Police officer who was present in the room to have Averett's attorney removed from the proceeding.

Ms. Hardy, who investigated the alleged rape never bothered to interview Averett's roommate and his neighbor.

In addition to the foregoing abuses of power and disregard for the Fourteenth Amendment and the issue of spoilation that the University Defendants, acting via Det. Brown, allowed to be destroyed the sexual activities that she engaged in with and without Averett, including her twerking while they had sex, and her showering in the nude and sending him pictures of it. He lost or caused to be lost or destroyed after Averett released them to him to be preserved for evidence. It cannot be ignored that he was assisting Hardy and working in and at the direction of Dean Mardis.

Among the many unjust and inexcusable failures of due process was the University Defendants' introducing at Averett's due process hearing Rule 26 Disclosures of Averett's

Wanton Endangerment charge brought by Dean Mardis and the University Defendants over the alleged incident involving Averett and his girlfriend. It had absolutely nothing to do with the hearing and the 1983 action that flowed from it. Obviously it violated the Student Code of Conduct, the Federal Rule of Civil Procedure 26, and the Fourteenth Amendment to the United States Constitution and equally clearly, the established Policies practices, and procedures of the University Of Louisville.

    Making the Defendants' behavior all the more unjust and and violative of the United States Constitution is that the Commonwealth of Kentucky had dismissed the case based on a violation of the Fourth Amendment to the United States Constitution. Furthermore, the Jefferson County Grand Jury rejected the University Defendants intense efforts to send Averett to the Penitentiary. After hearing Averett's testimony the Grand Jury refused to indict him.  It is revealing that Coleman refused to appear before the Grand Jury and defend the tale that Hardy and the University Defendants accepted without question.

    WHEREFORE, for the foregoing reasons, and more, Coleman's Motions In Limine must respectfully be denied.

Respectfully submitted

Aubrey Williams
One Riverfront Plaza, Ste. 1708
401 West Main Street
Louisville, KY  40202
(502-581-1088
E:Aubreyw8243@bellsouth.net
**Counsel for Plaintiff**

### CERTIFICATE OF SERVICE

It is hereby certified that the foregoing document was filed with the Clerk via the Court's electronic filing system on the 18th day of September, 2023 which sent

notice of filing to the following individuals on even date:
Donna King Perry
Matthew Barscz
Dinsmore &Shohl, LLP
101 South Fifth Street, Suite 2500
Louisville, KY 40202
Counsel for Shirley Ann Hardy and University Defendants
Email:donna.perry@dinsmore.com
Email:matthew.baarszcz@dinsmore.com
Jeremiah A.Byrne
D. Christopher Robinson
CaseyWood Hensley
Frost Brown Todd400 West Market Street, 32nd Floor
Louisville, KY40202
E.Mail:jybyrne@fblaw.com
crobinso@fbtlaw.com
Counsel for Destinee Coleman